## LANIER v. NASH.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF OHIO.

Argued April 7, 1887.—Decided April 18, 1887.

On the facts proved the court holds that this suit was properly brought in the name of the plaintiffs in error, but that they were acting as trustees for others for whose benefit its results were to be applied, and it affirms the judgment of the court below.

To constitute a collusive assignment under § 5 of the act of March 3, 1875, c. 137, when the title made by the transfer is complete so as to give the assignee power to maintain suit in his own name, it must appear that the object of the transfer was to create a case cognizable under the act of 1875.

IN equity to foreclose a mortgage. The case is stated in the opinion of the court.

*Mr. Laurence Maxwell, Jr.,* for appellants.

*Mr. John Coffey* for appellees. *Mr. David Stuart Hounshell* filed briefs for same.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This is a suit for the foreclosure of a mortgage made by John Nash and Ellen Nash, his wife, to Hugh Colville, under date of December 4, 1876, on certain lands in Logan County, Ohio, the separate property of the wife, to secure a note of the husband for $13,000, payable to the order of Colville, in three years from date, with interest at the rate of eight per cent. per annum, payable semi-annually, and the chief controversy on the appeal is as to the amount that is due. In the view we take of the case little else is involved except questions of fact. From the testimony we find that for many years prior to July 4, 1879, the Commercial Bank of Cincinnati was an unincorporated banking association, having its office in Cincinnati, Ohio. John Nash, a manufacturer, doing

business in that city, either alone or with others, under the name of John Nash & Co., had long been a customer of the bank, making deposits and getting discounts of his business paper as occasion required.

Some days before December 4, 1876, Nash, being in want of $12,000 to settle a debt which he owed for iron and to meet some other liabilities, applied to Colville, the cashier of the bank, for a loan of that amount on real estate as collateral. Colville, after consultation with the directors, agreed to let him have the money, and he thereupon procured the execution by his wife of the mortgage now in suit, and another on a house and lot she owned in Cincinnati to secure another note of his for $7000, payable to the order of Colville in three years from date, with interest at the rate of eight per cent. per annum, payable semi-annually. He then took the two notes and mortgages to the bank and placed them as collateral security for his own note for $12,000 at sixty days, which was discounted and placed to his credit in account. At the time this was done it was hoped and expected that Nash would get some one to lend him the money on the mortgages, and thus enable him to take up his note to the bank.

When this arrangement was made, Nash or his firm was indebted to the bank for notes of his customers that had been discounted and not paid at maturity to an amount between $4000 and $5000. As the notes which had been discounted were protested and came back, he gave his own notes or those of his firm for the same amount, payable at a future day, which were discounted and the old paper retained as collateral. An effort has been made in this case to show that, at the time the $12,000 was lent, it was agreed that the mortgages should be placed as collateral to the old debt as well as the new, but the preponderance of the evidence is decidedly the other way, and we have no hesitation in finding that no such agreement has been proven.

Nash continued in business until January, 1878, when he failed and made an assignment. In the meantime he had borrowed from the bank another $1000, which it is conceded was secured by a pledge of the notes and mortgages as collat-

er*J. He renewed all his notes to the bank as they became due; until near the time of his failure, paying the interest thereon at each renewal. No payment of interest was ever made, however, on the mortgage notes, and on the 10th of May, 1879, a suit was begun by Colville, who was a citizen of Kentucky, in the Circuit Court of the United States for the Southern District of Ohio, for the foreclosure of that for $7000, on account of default in the payment of interest. While this suit was pending a corporation was organized under the name of the Commercial Bank of Cincinnati, which became in fact the successor of the old bank by taking its good assets and assuming its liabilities. Among the other assets transferred to the corporation were the debts of Nash and his firm, and their collaterals. In making this transfer Colville indorsed the note for $13,000 in blank, and the note and the mortgage for its security were delivered to the new bank. He also made an assignment of his interest in the suit then pending on the other note and mortgage. The president and cashier of the new bank were different from those of the old bank, but some, if not all, the directors of the new were the same as those in the old.

On the 30th of August, 1879, a decree *pro confesso* was entered in the suit for the foreclosure of the $7000 mortgage, under which a sale of the mortgaged property was made, which realized $6532.72 over and above the costs and expenses, and this amount was paid to the new bank on the 28th of November, 1879.

The note of $13,000 fell due December 7, 1879, and on the 12th of November next, before its maturity, it was sent by the president of the new bank to Winslow, Lanier & Co., the plaintiffs in this suit, enclosed in a letter, of which the following is a copy:

"CINCINNATI, O., *Nov.* 12, 1879.

" Mess. Winslow, Lanier & Co., New York.

"GENTS: I enclose herewith note of John Nash with mortgage, dated Dec. 4th, 1876, at 3 years, with interest at 8 per cent., for $13,000 ; the first two years' interest paid.

"I will thank you to place this note to the credit of the bank under discount, and oblige,

"Yours, very resp'y,

"(Signed) CHAS. B. FOOTE, *Pr's't.*"

Accompanying the note when sent was this guaranty written on a separate piece of paper:

"The Commercial Bank of Cincinnati hereby guarantees collection and payment of the note of John Nash to the order, of Hugh Colville, dated Dec. 4, 1876, for $13,000, at 3 years, with interest at eight per cent. annually, and the mortgage securing the same, if purchased by Mess. Winslow, Lanier & Co. The first two years' interest has been paid.

"(Signed) CHAS. B. FOOTE, *Pres't.*"

Winslow, Lanier & Co. were bankers in the city of New York, and had been for many years the correspondents of the old bank in that city, and the new bank continued the same business relations with them on its organization. On the receipt of the note the credit was given for the amount of the note and one year's interest, less the discount until maturity, as requested. Afterwards the president of the Commercial Bank wrote Winslow, Lanier & Co. as follows:

"COMMERCIAL BANK, CINCINNATI, O., *Nov.* 28, 1879.

"Mess. Winslow, Lanier & Co., New York.

"GENTS: I have to ask you to notify John Nash and wife, (West Liberty, Logan County, Ohio,) immediately by letter that you hold the note and mortgage for $13,000 and int., requesting payment accordingly at maturity.

"In your letter to them please say nothing concerning the first two years' interest, as the sum collected by us from other collections may not prove to be sufficient to pay the entire two years' interest, as it was supposed it would. In case this debt should not be paid at maturity I have further to ask that you do not charge it to our ac., but hold it so that suit can be brought by you if necessary. I enclose a letter to me from our att'ys, King, Thompson & Maxwell, which please read and return to me. Very respectfully,

"CHAS. B. FOOTE, *P's.*"

"CINCINNATI, *Dec.* 3, 1879.

"Mess. Winslow, Lanier & Co., New York.

"GENTS: I have your favor of 1st inst. It was intended that the guaranty of this bank for the collection and payment of the note of Jno. Nash, dated Dec. 4, 1876, at 3 years, with 8 per cent. interest, should continue in full force until the final collection of the debt. This guaranty is hereby confirmed and continued in full force until the final collection of the note. I enclose confirmation from Mr. Sherlock to the same effect. Very resp't,

"(Signed) CHAS. B. FOOTE, *Pres.*"

"COMMERCIAL BANK, CINCINNATI, OHIO, *Dec.* 10, 1879.

"Mess. Winslow, Lanier & Co., New York.

"GENTS: I have your favor of 8th inst. inclosing copy of a letter from Mess. Avery & L'Hommedieu, attorneys for John Nash. I shall be obliged if you will reply to Mess. Avery & L'Hommedieu, notifying them that unless the debt is immediately paid or satisfactorily arranged the note and mortgage will be put in suit by you.

"In case suit becomes necessary I will thank you to place the paper in the hands of the Hon. R. P. Ranney, Cleveland, Ohio, (unless you prefer other counsel,) with instructions [to] bring suit in U. S. Circuit Court to foreclose the mortgage in your name.

"You will please refer Judge Ranney to Mess. King, Thompson & Maxwell, our att'ys, for any information required for the suit.

"Of course we bear all the expenses.

"Very resp't,

"(Signed) CHAS. B. FOOTE, *Pres.*"

"COMMERCIAL BANK, CINCINNATI, O., *Feb.* 20, 1880.

"Mess. Winslow, Lanier & Co., New York.

"GENTS: Your favor of the 19th inst. is at hand. I will thank you to send the note and mortgage of John Nash to Judge Ranney, of Cleveland, in accordance with the terms of my letter of the 10th of Dec.

"Very resp't,

"(Signed) CHAS. B. FOOTE, *Pres't.*"

In accordance with these directions the note and mortgage were sent to Mr. Ranney, who began this suit for the fore-closure March 19, 1880. Both Nash and his wife answered the bill, denying that the plaintiffs were the holders and owners of the note, and claiming that if they were they took them subject to all defences which would have been good against Colville, the payee and mortgagee, and that the amount realized from the sale of the property covered by the $7000 mortgage should be allowed as a credit on the other.

The Circuit Court sustained this defence and gave a decree accordingly. From that decree this appeal was taken.

The facts established by the evidence, taken together, show, as we think, that when the suit was begun Winslow, Lanier & Co. had such a title to and interest in the note and mortgage as gave them the right to sue therefor in their own names. They had actually discounted the note and placed the proceeds to the credit of the bank in their general account, and it does not appear that this credit had ever been cancelled when the suit was brought. But it is equally apparent that they are not either in law or equity entitled to protection as innocent holders for value against the defences of Nash and wife to the note and mortgage in the hand of Colville or the old bank. As between the old bank and the new we entertain no doubt that the new bank is to be treated in all respects as the successor of the old, taking the assets that were turned over as they stood and assuming the liabilities. All the knowledge of the old bank as to the rights of the parties to the securities transferred is chargeable in law on the new.

The transfer from the new bank to Winslow, Lanier & Co. shows on its face that it was not made in the usual course of business between a western bank and its New York corre-spondent. The note, which was originally for three years, and secured by mortgage, had less than thirty days to run, and was payable at the Cincinnati bank. It was not even indorsed by the bank in the usual way, but, instead, a formal guaranty of collection and payment, on a separate paper, was sent for-ward to take effect if the purchase was made. The letter accompanying the papers contained not a word of explanation,

and even before the maturity of the note the bank began to give directions in respect to the course to be taken for its collection, accompanied by a request that if payment was not made the note should not be charged back in account, but held "so that suit can be brought by you if necessary." These directions were continued after maturity, and so far as appears always followed, even to the time and manner of commencing suit. Under these circumstances we cannot look on Winslow, Lanier & Co. in any other light than as trustees for the bank, and proceeding for the collection on its account the avails to be credited when realized.

In this court it was claimed in argument that the trans. er was collusive for the purpose of creating a case cognizable by the Circuit Court of the United States, and, therefore, should have been dismissed below under the authority of § 5 of the act of March 3, 1875, c. 137, 18 Stat. 470, but we find no sufficient evidence to justify us in reversing the decree and sending the suit back for a dismissal. The transfer was undoubtedly made for the purpose of putting it in the power of Winslow, Lanier & Co. to bring a suit, but this, for anything that now appears, might as well have been begun in a state as in a federal court. The object of the bank seems to have been not to give jurisdiction to the courts of the United States, but to create an ownership which would cut off the anticipated defences of the mortgagors. That of itself is not enough to make it proper for the courts of the United States to refuse to take jurisdiction if the title made by the transfer is complete, and such as will enable the assignee to maintain a suit in his own name at all. To justify a dismissal it must appear that the object was to create a case cognizable under the act of 1875.

This disposes of the whole case, and the decree is consequently

*Affirmed.*