# CRAWFORD *v.* NEAL.

# NEAL *v.* CRAWFORD.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF OREGON.

Nos. 186, 278. Argued March 21, 1892. — Decided April 18, 1892.

The jurisdiction of a Federal court by reason of diverse citizenship is not defeated by the mere fact that a transfer of the plaintiff's interest was made in order, in part, to enable the purchaser to bring suit in a court of the United States, provided the transfer was absolute, and the assignor parted with all his interest for good consideration.

The statutes forbidding the transfer by a debtor of his property with intent to hinder, delay or defraud creditors do not invalidate a conveyance by a debtor to a *bona fide* creditor, with intent to prefer him.

The burden of setting aside a conveyance by a debtor as made with intent to hinder, delay or defraud creditors is on the attacking creditor; but where the fraudulent intent on the grantor's part is made out, and the circumstances are suspicious, then the purchaser must show that he paid full value; and if this is shown it must then be made to appear that the purchaser had full knowledge of the fraud.

The findings and conclusions of a master upon conflicting testimony are to be taken as presumptively correct, and unless some obvious error in the application of the law has intervened, or some serious or important mistake has been made in the consideration of the evidence, the decree should stand.

The continued possession by an insolvent debtor of his real estate after the transfer of it to a creditor by way of preference may be explained by the surrounding circumstances.

Of two conveyances made by an insolvent debtor at the same time to two individuals, one may be held to be valid as a preference of a *bona fide* creditor, and the other invalid as made with an intent to hinder, delay or defraud creditors, unless the two transactions are so intermingled as to make them necessarily but one transaction, in which case both will be void.

THE court stated the case as follows:

This was a bill filed by Charles A. Neal in the Circuit Court of the State of Oregon for the county of Linn, July 1, 1886, against James H. Foster, John A. Crawford, William Craw-

ford, Ashby Pearce, John R. Baltimore, J. L. Liles, E. Walden, and W. H. Goltra, and subsequently removed, on the application of the complainant, to the Circuit Court of the United States for the District of Oregon. The bill was in the nature of a creditor's bill, seeking to set aside certain conveyances of real (and some personal) property by the defendant James H. Foster to the defendants John A. Crawford, William Crawford and Ashby Pearce, upon the ground that they were made to hinder, delay and defraud the complainant and certain of the defendants, as judgment creditors of the said Foster. Complainant was a citizen of the State of Illinois and defendants were citizens of the State of Oregon, and complainant claimed as the assignee of two judgments, the first rendered in the state circuit court, March 8, 1886, in favor of Sibson, Quackenbush & Co., for $14,037.87, with costs and interest, and the second, rendered in the same court and on the same day, in favor of W. C. Noon & Co., for the sum of $1920.35 with interest. The defendants Goltra, Walden, Liles and Baltimore were also judgment creditors of Foster.

Answers and replications having been filed, the cause was referred to a master to take testimony and to report his findings of fact and conclusions of law thereon.

The master found the various judgments, and that execution had been issued and returned unsatisfied upon those in favor of Sibson, Quackenbush & Co. and W. C. Noon & Co.; that Foster was insolvent on February 6, 1884, and had so continued since that time, and had no property out of which the judgments of complainant and the other creditors could be satisfied; that on February 6, 1884, Foster conveyed to John A. Crawford certain parcels of real estate numbered from one to five, and certain personal property, and to William Crawford another parcel of real estate known as the "brick store property," numbered six, and that on February 7, Foster conveyed to Ashby Pearce a certain other parcel numbered seven, and a small amount of personalty; and that the parties to these transfers, at the time they were made, agreed upon the prices of the property, which aggregated $79,000.

"That at the time of the transfer the said several parcels of

property, real and personal, so transferred by Foster to J. A. Crawford, were fairly and reasonably worth —

Tract 1 & 2 ............................  $30,000
"     3 .................................   2,500
"     4 .................................     500
"     5 .................................   3,000
Book accounts ..........................   3,000
Grain sacks.............................   3,000

     Total.............................................. $42,000
The property conveyed to William Crawford at the
     time of the transfer was actually worth.......... 18,000
The real property conveyed to Ashby Pearce was at
     the time of the transfer actually worth ..  $3,500
And the personal property .............∴       700

     Total...............................................  4,200
                                                          _____
                                                          $64,200 "

The master further found —

"XVIII. That in 1867 J. H. and John Foster were partners in a mercantile business under the firm name of J. H. Foster & Co., and in that year bought the Magnolia mill from Wm. Crawford for $16,000, paying $6000 cash and executing five notes for $2000 each, of date July 20, 1867. These notes were secured by a mortgage on the mill property and a brick store, which mortgage was duly recorded.

"That in 1876 J. H. Foster bought out John Foster's interest in the mills and business and assumed all the debts and liabilities of J. H. Foster & Co., and thereafter individually continued the business under the same firm name.

"That the business of the Crawfords with J. H. Foster was, for a considerable time, conducted under the name of Crawford Bros., and was transacted by John A. Crawford, who was the agent and representative of Wm. Crawford.

"That on or before the 6th day of February, 1884, J. H. Foster was owing said J. A. Crawford on notes and accounts

for money lent and water rent the sum of $27,733, which was then due and unpaid, and that at the time said J. A. Crawford was also liable as surety for $16,000, or thereabouts, upon endorsements which he had made for the accommodation of said Foster.

"That on said 6th day of February, 1884, said J. A. Crawford, as a part of the consideration for said transfer, executed and delivered to J. H. Foster his note for $10,000, with the understanding that said Foster should hold said note as a security that said Crawford should perform a verbal agreement then made between said J. A. Crawford and said Foster, to the effect that said Crawford should purchase the wheat of or satisfy divers persons who held warehouse receipts of said Foster for wheat stored by them with said Foster in his warehouse, and which wheat Foster had converted to his own use, to the amount, in all, of about 20,000 bushels, and save said Foster harmless therefrom.

"That said J. A. Crawford then agreed with said Foster that, as a part consideration for the transfer of said property, he would assume and pay the said $16,000 for which he was security for said Foster as aforesaid.

"That all of said indebtedness of said J. H. Foster to said J. A. Crawford was at the date of said transfer surrendered to said Foster and cancelled, as a part of the consideration for said property so deeded and transferred as aforesaid, and that said Crawford has since taken up and cancelled said wheat receipts and satisfied said note of $10,000, and has since said 6th day of February, 1884, paid said debts on which he was security for said Foster and caused the same to be cancelled as to said Foster.

"That the purchase of said property from said J. H. Foster by J. A. Crawford, as aforesaid, was made in good faith, and that full value was paid therefor.

"That the defendant Ashby Pearce was an accommodation maker only of the note to J. H. Foster & Co. which said Pearce afterward paid to John Conner; that at the date of the transfer by J. H. Foster to said Pearce as aforesaid said Foster was indebted to Pearce in the amount of said note so

paid by Pearce as surety for Foster; said note was for $5000.; that the purchase of said property by Pearce was in good faith, and that more than full value was paid therefor.

"That on the said 6th day of February, 1884, said J. H. Foster was not indebted to William Crawford; that the mortgage referred to in finding XVIII was prior to its satisfaction on the record, which took place on the 31st of July, 1883, paid in full; that said mortgage was satisfied of record by Wm. Crawford on the last-mentioned date; that no valid consideration for the transfer of the brick block to said Crawford by said Foster passed from said Crawford to said Foster; that said conveyance of said brick building by said Foster to said Crawford was a voluntary one.

"That since the transfer of said brick building by said Foster to said Wm. Crawford the latter has expended thereon in permanent improvements some $2000."

And as conclusions of law the master reported:

"I. That the complainant's bill should be dismissed as to defendants Ashby Pearce and John A. Crawford.

"II. That the deed of J. H. Foster to defendant Wm. Crawford is constructively fraudulent and void as against the complainant and the other creditors of said Foster named in the pleadings and should be cancelled and set aside."

Exceptions were filed to the master's report by complainant and by William Crawford.

The case as to Goltra was disposed of adversely to him upon a cross-bill filed by Foster and the Crawfords, and, as he did not appeal, requires no further reference. The defendants Foster, the Crawfords and Pearce, in addition to denying that any of the conveyances were fraudulent or without consideration, or made to hinder, delay or defraud creditors, denied that the complainant was the real owner of the two judgments of which he claimed to be the assignee, and averred that they were transferred to him without his knowledge and without consideration; that said transfers were made for the sole and only purpose, and with the object and intention, of collusively giving or attempting to give jurisdiction to the Federal court, and that Sibson, Quackenbush & Co. and W. C. Noon & Co.

were and had ever been, since the judgments were rendered, the real owners thereof, respectively; and that complainant had no interest in either of them.

The case was heard upon the bill and answers, the testimony and the exceptions to the master's report, and a decree entered dismissing the bill as to the defendants John A. Crawford and Ashby Pearce, and setting aside the conveyance by Foster to William Crawford, and directing a sale of the property included in that conveyance and the application of the proceeds, first, to the satisfaction of the judgments held by complainant as assignee and the costs and expenses of the sale, and second, to the satisfaction of other judgments referred to in the pleadings. From this decree Neal and William Crawford, severally, took appeals to this court.

The opinion of Judge Deady, holding the Circuit Court, will be found reported in 36 Fed. Rep. 29.

*Mr. John H. Mitchell* for William Crawford and John A. Crawford.

The principles of the statute of 13 Eliz. c. 5, have been incorporated into the Oregon statutes with this modification, which has also been adopted in most of the States : that is, that when the question of the validity of a conveyance of property depends upon its fraudulent character it must be shown that the grantee participated in the fraud, and the fact that the grantor alone is guilty is not sufficient to invalidate the conveyance.

The Oregon statute is taken from the New York code and is a copy of it.

In *Stearns* v. *Gage*, 79 N. Y. 102, and in *Parker* v. *Conner*, 93 N. Y. 118, it was held that when a valuable consideration had been paid, actual notice on the part of the grantee of the grantor's fraudulent intent is necessary to avoid the conveyance to creditors and others. The Supreme Court of Oregon hold to the same rule. *Coolidge* v. *Henecky*, 11 Oregon, 327.

The Oregon statute as to fraudulent conveyances is in substance similar to, and almost identical in language with the

statute of the State of Virginia on that subject. In *Peters* v. *Bain*, 133 U. S. 670, 686, this court said: "In controversies arising under this statute, involving as they do the rights of creditors locally and a rule of property, we accept the conclusions of the highest tribunal as controlling. *Jaffray* v. *McGehee*, 107 U. S. 361; *Lloyd* v. *Fulton*, 91 U. S. 479; *Allen* v. *Massey*, 17 Wall. 351."

An assignment for the benefit of creditors, preferring unsecured creditors, is not *prima facie* fraudulent. *Kruse* v. *Prindle*, 8 Oregon, 158. Foster had a right to make a preference as between his creditors. The right to make a preference resulted from the dominion which the owner has over his property. It is a part of his proprietorship. The law has not said he shall divide his estate *ratably* among his creditors. It has left him the discretion to act as he wills, provided only he acts with honest intent to pay a valid debt, and does not under cover of such a disposition stipulate for a benefit to himself. *Eldridge* v. *Phillipson*, 58 Mississippi, 270; *Estes* v. *Gunter*, 122 U. S. 450, 455; *Brooks* v. *Marbury*, 11 Wheat. 78; *Kruse* v. *Prindle*, 8 Oregon, 158.

A conveyance upon a valuable consideration cannot be declared void as to creditors, though made with a fraudulent purpose on the part of the vendor, unless the vendee participates in or had notice of such purpose. *Astor* v. *Wells*, 4 Wheat. 466; *Worthy* v. *Caddell*, 76 N. C. 82; *Prewitt* v. *Wilson*, 103 U. S. 22.

Fraudulent intent upon the part of the debtor alone is not sufficient. *Bonser* v. *Miller*, 5 Oregon, 110; *Prewitt* v. *Wilson*, 103 U. S. 22.

*Mr. C. E. S. Wood* (with whom was *Mr. George H. Williams* on the brief) for Neal.

I. John Crawford was practically and in equity a cograntee with his brother William Crawford; and if the conveyance to William Crawford is void, then the whole transaction is void: for a conveyance to a grantee for a valid consideration is void if the grantee knew that a conveyance to a cograntee was

fraudulent and fictitious. *Swartz* v. *Hazlett*, 8 California, 118; *Lewis* v. *Caperton*, 8 Gratt. 148.

II. A conveyance founded in part upon a fraudulent consideration will not be sustained to the extent of the honest consideration, but is void altogether. *Baldwin* v. *Short*, 26 N. E. Rep. 928.

III. A conveyance made to secure part of the property to the grantee upon a valid consideration, but to cover in the residue for the grantor, is void as to the whole. *Swinford* v. *Rogers*, 23 California, 233; *Chase* v. *Walker*, 26 Maine, 555; *Rice* v. *Cunningham*, 116 Mass. 466; *Macomber* v. *Peck*, 39 Iowa, 351.

IV. It is immaterial whether the property is parcelled out in one or several deeds and whether the papers are executed on the same day or not. If done to effect the same design, all must be regarded as one transaction. *Mussey* v. *Noyes*, 26 Vermont, 462; *Burrows* v. *Lehndorf*, 8 Iowa, 96; *Berry* v. *Cutts*, 42 Maine, 445; *Spaulding* v. *Strang*, 38 N. Y. 9.

V. A conveyance in fraud of the grantor's creditors is void although the grantee pays the full value if he participated in the fraudulent purpose. *Gardinier* v. *Otis*, 13 Wisconsin, 460.

VI. Where the grantor remains in possession and continues to manage the property as before, his declarations made in connection therewith are admissible. *Redfield* v. *Buck*, 35 Connecticut, 328.

VII. Possession is part of the *res gestæ;* and where the grantor remains in possession, his acts and declarations are competent evidence explanatory of them. *United States* v. *Griswold*, 7 Sawyer, 296.

When the *bona fides* of a transfer is attacked by creditors, and some evidence has been given tending to show a common design between the grantor and the grantee to defraud, declarations of the grantor after the transfer are admissible. *Hartman* v. *Diller*, 62 Penn. St. 37; *Deakers* v. *Temple*, 41 Penn. St. 234.

Possession and management after sale are badges of fraud. *Lukins* v. *Aird*, 6 Wall. 78; *Callan* v. *Statham*, 23 How. 477. Where the grantor, being greatly in debt, with suit threaten-

ing, conveyed his land for a consideration about one-half its value, and continued in possession the same as before, the conveyance was held to be void as against creditors. *Hudgins* v. *Kemp*, 20 How. 45.

Mr. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

If the transfers of the judgments to the complainant were fictitious, the plaintiffs therein continuing to be the real parties in interest, and the complainant but a nominal or colorable party, his name being used only for the purpose of jurisdiction, then the objection to the jurisdiction of the Circuit Court would be well taken; but if the transfers were absolute and the judgment creditors parted with all their interest for good consideration, then the mere fact that one of the motives of the purchase may have been to enable the purchaser to bring suit in the United States court, would not be sufficient to defeat the jurisdiction. *McDonald* v. *Smalley*, 1 Pet. 620; *Barney* v. *Baltimore*, 6 Wall. 280; *Williams* v. *Nottawa*, 104 U. S. 209; *Manufacturing Co.* v. *Bradley*, 105 U. S. 175, 180; *De Laveaga* v. *Williams*, 5 Sawyer, 573, per Mr. Justice Field.

It was established by the testimony of members of the firm of Sibson, Quackenbush & Co. that their judgment was sold to Neal for his note for $5000; that the firm was not concerned in any way in the result of the pending litigation, and had parted with its entire interest in the judgment; and by the testimony of a member of the firm of W. C. Noon & Co. that that firm sold its judgment to Neal for $500, absolutely and without condition. The plaintiffs in these judgments retained no interest whatever therein.

But it is said that Neal knew nothing about the transaction; that the alleged consideration was never paid; and that the state courts had previously held the conveyances valid, thus justifying the inference that the purchase was in pursuance of a collusive attempt to relitigate the question in the United States courts.

It is true that the averments of the cross-bill filed against Goltra and admitted by his demurrer, show that Goltra attacked the validity of the conveyances in the state Circuit Court; that the conveyances were sustained; and that his appeal to the Supreme Court was dismissed; but, as already said, the mere existence of the wish to bring suit in the United States court, as a motive for the purchase of these judgments, is not enough if the purchase was in fact made.

The record discloses that Neal was interested in milling property in Oregon, in which W. M. Ladd and his father, of the firm of Ladd & Tilton, were also interested; that one Wilcox managed the property for them; that Sibson, Quackenbush & Co. were successors of Sibson, Church & Co., the membership of the firms being the same, except that Church had retired; that Sibson, Church & Co. were largely indebted to Ladd & Tilton, and the liquidation of its affairs was being conducted by Sibson, Quackenbush & Co., to whom all the assets had passed, Wilcox managing the liquidation on behalf of the Ladds; that Sibson, Church & Co. had been the agents of the old mill; and that Sibson, Quackenbush & Co. were the agents of the new, in which Neal had an ownership. That W. M. Ladd was the attorney in fact of Neal, and Wilcox the managing man for Neal as well as the Ladds. That Wilcox purchased the judgments, and paid for them, respectively, by a note for $5000, and one for $500, signed for Neal by Ladd, and that the $5000 note was turned in by Sibson, Quackenbush & Co. on the indebtedness of Sibson, Church & Co., and so paid; and that the $500 was paid at once by Ladd & Tilton. Wilcox, who conducted the business in respect of these purchases, was not called as a witness by defendants Crawfords and Pearce, although it clearly appeared that he could have given all the details. The fair inference is that what was done was within the powers conferred by Neal on Ladd and Wilcox, and as the sales were absolute, and without any trust or reservation in favor of the judgment creditors, the conclusion of the Circuit Court on this branch of the case was manifestly right.

The statute of 13 Eliz. c. 5 has been in the main reënacted

in the various States of the Union. In Oregon it is provided that: "Every conveyance or assignment in writing or otherwise of any estate or interest in lands or in goods or things in action, or of any rents or profits issuing therefrom, and every charge upon lands, goods or things in action, or upon the rents or profits thereof, made with the intent to hinder, delay or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts or demands, and every bond or other evidence of debt given, suit commenced, decree or judgment suffered, with the like intent, as against the persons so hindered, delayed or defrauded, shall be void." And it is further provided that the question of fraudulent intent in all cases arising under that section shall be "deemed a question of fact, and not of law," and that the section "shall not be construed in any manner to affect or impair the title of a purchaser for a valuable consideration, unless it shall appear that such purchaser had previous notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor." 2 Hill's Ann. Laws Oregon, 1887, pp. 1373, 1374, §§ 3059, 3062, 3063.

A collusive transfer, placing the property of a debtor out of the reach of his creditors, while securing to him its beneficial enjoyment, is not to be tolerated; yet an insolvent debtor may prefer a creditor, even though the latter has knowledge of such insolvency. The effect of the preference may be to delay his other creditors, but if the transaction is in good faith and made with the intention of paying the preferred debt, and without any secret trust, the conveyance by which the preference is effected is not fraudulent. And the extinguishment of an existing indebtedness is a valuable consideration for a purchase made in good faith.

The burden is upon the attacking creditor, but where the fraudulent intent on the grantor's part is made out and the circumstances are suspicious, the purchaser must show that he has paid value, and if he does, it must then appear that the purchaser had notice of the fraud. These we understand to be the principles applied by the Supreme Court of Oregon in passing upon the statute of that State. *Kruse* v. *Prindle,* 8

Oregon, 158; *Lyons* v. *Leahy*, 15 Oregon, 8; *Philbrick* v. *O'Connor*, 15 Oregon, 15; *Weber* v. *Rothchild*, 15 Oregon, 385; *Weaver* v. *Owens*, 16 Oregon, 301; *Taylor* v. *Miles*, 19 Oregon, 550. And this court accepts the construction given to such a state statute as controlling. *Peters* v. *Bain*, 133 U. S. 670.

The cause was referred to a master to take testimony therein, "and to report to this court his findings of fact and his conclusions of law thereon." This he did, and the court, after a review of the evidence, concurred in his findings and conclusions. Clearly, then, they are to be taken as presumptively correct, and unless some obvious error has intervened in the application of the law, or some serious or important mistake has been made in the consideration of the evidence, the decree should be permitted to stand. *Tilghman* v. *Proctor*, 125 U. S. 136; *Kimberly* v. *Arms*, 129 U. S. 512; *Evans* v. *State Bank*, 141 U. S. 107.

The master found that John A. Crawford paid on behalf of Foster not less than $10,000 in satisfaction of the holders of warehouse receipts of Foster for wheat stored by them, but which Foster had converted to his own use; also about $16,000 upon endorsements which he had made for the accommodation of Foster; and further satisfied an indebtedness of Foster to himself, amounting, on the 6th of February, 1884, to the sum of $27,737.23; and that this total of $53,737.23 constituted the consideration of the conveyance and transfer by Foster to him of property reasonably worth $42,000; and as to Ashby Pearce, the master found that he was an accommodation endorser for Foster on a note for $5000, which he was obliged to pay; and that this was the consideration of the conveyance and transfer to him of property, real and personal, of the value of $4200.

The learned judge of the Circuit Court stated, in his opinion, that on the argument it was tacitly conceded that the conveyance to Pearce was made for a full consideration and for no other purpose than to prefer him to other creditors; and that concession is, in effect, made here, and, even if it were not, the evidence admits of no other conclusion.

The Circuit Court also reviewed the evidence as to Foster's condition on February 6, 1884, and found that he had lost largely by reason of a decline in flour during the winter, and was short about 20,000 bushels of wheat, "for which he had given receipts, on any one of which he was liable at any moment to a criminal prosecution;" that there was no room to doubt that John A. Crawford was then liable as surety on Foster's paper for $15,900; "that he afterwards paid the same as part of the consideration of the transfer to him;" that Crawford paid out from $10,000 to $15,000, say $12,500, in settling with farmers and others holding Foster's wheat receipts for 19,541 bushels, that the latter had used; and that in addition Crawford, as part of the consideration for the purchase, applied an open account of $5803 due from Foster to him; and so that Crawford unquestionably paid a consideration of $34,113 for the property, which was "more than it would have probably sold for at sheriff's sale, and more than three-fourths of the value that the master places upon it, which in my judgment is its full market value."

But the master included in the total paid certain notes of Foster held by Crawford, amounting to $16,930, with interest, and while the Circuit Judge held that the evidence, in respect of these notes and their being cancelled as part payment for the property was conflicting, he nevertheless thought that the weight of the evidence sustained the result arrived at by the master. The contention of complainant was that while the notes were paid at some time, this was before the transfer of the property, when they were fraudulently revived for the purpose of being made a part of the consideration thereof; but upon the whole, the judgment of the court was that the "Foster notes in question were existing obligations between the parties at the date of the transfer, and that, whether this be so or not, the purchase was made in good faith and for a valuable and even adequate consideration." We concur that the consideration was not in any view so inadequate as to raise an inference of bad faith, and that it probably exceeded the value of the property conveyed.

Some stress is laid in argument upon the possession by Fos-

ter, after the transfer, of the mill and his residence. It is not contended that such possession of realty rendered the transaction fraudulent *per se*, (*Phettiplace* v. *Sayles*, 4 Mason, 312, 324 ) but that it afforded persuasive evidence of fraud in fact.

But, as the court remarks, the surrounding circumstances must be taken into account. The two men were friends of many years standing. They had grown old together, and when Foster failed, and transferred a large part of his property to Crawford, his principal creditor, there was nothing unreasonable in the employment of the former by the latter to run the mill at seventy-five dollars a month and the use of the dwelling. This is what was done according to the testimony, and the explanation was properly held to be satisfactory.

And so as to Foster's declarations. Expressions of hope of recovery indulged in by a person reduced to poverty by large losses must be taken with many grains of allowance, and those testified to here as indicative of the retention of an actual interest in the property fall short of overcoming the explicit evidence to the contrary.

The case as to William Crawford is of much more difficulty.

We cannot accept the view of complainant's counsel that it is impossible to hold the conveyance to William Crawford invalid without also setting aside that to John A. Undoubtedly the rule is that a transaction void in part for fraud in fact is entirely void, but here the transactions were so distinct that while the circumstances surrounding the one should be given due weight so far as they may bear upon the other, a result adverse to the validity of the one does not necessarily compel a like result as to the other. The instruments were several; the grantees, the property conveyed, the alleged consideration, were all different and disconnected; and although John A. acted for his brother in obtaining the deed, yet we are not prepared to hold that error was committed in declining to treat the conveyances as constituting parts of a single transaction and rendering John A. a cograntee with William.

The case as to William turned upon the existence, unpaid,

of certain notes against Foster, which he claimed were outstanding on the 6th of February, 1884, and surrendered as the consideration for the conveyance of the "brick store property."

The master found that in 1867 William Crawford sold the Magnolia mill property to J. H. and John Foster for $16,000, receiving $6000 in cash and taking five promissory notes of the Fosters for $2000 each, bearing date July 20, 1867, maturing in one, two, three, four and five years after date, respectively, and secured by a mortgage on the mill and other property duly executed and recorded; that it was contended on behalf of William Crawford that these notes were taken up by J. H. Foster's notes, six in number, for $16,000, bearing date July 20, 1883, five of them for $2000 each, payable in one, two, three, four and five years after date, and one for $6000 payable in one year after date, which notes were produced and put in evidence. That the mortgage was cancelled of record by Crawford on July 31, 1883. That in 1876, J. H. Foster bought the interest of his brother John in the business and property of J. H. Foster & Co., and assumed all the liabilities of the late firm, this being four years after the maturity of the last of the five notes given for the mill by the two Fosters. That during all these years Foster was doing a lucrative business and was expending considerable sums in the improvement and development of his mill property, and in embarking in new ventures. That in 1876 Foster paid large sums to John A. Crawford in money and by transfer of notes of other people. And the master concluded that the probabilities were strong that John Foster would have insisted upon the taking up of the notes either by payment or the substitution of new notes in 1876 when J. H. Foster bought him out; and that William Crawford would not, while J. H. Foster was doing so large a business and paying over so much money, allow these original notes to run until the interest amounted to three-fifths of the principal. But aside from the probability that these notes were paid long before the satisfaction of the mortgage, the master referred to the positive testimony that upon the passage of the law known as the mortgage tax

law, which went into operation in 1883, the then county clerk of Linn County called the attention of William Crawford to the fact that the records disclosed an unsatisfied mortgage in his favor against Foster, and asked him to call and see about it, which Crawford did, and, expressing surprise that the mortgage was still on the record and remarking that it had been paid off several years before, cancelled it; also to the evidence of a banker in Albany that in 1878 or 1879 his attention was called to the fact that this mortgage was unsatisfied of record, and he asked Foster in relation to it, and was told by him that the mortgage was paid; also to the sworn return to the assessor of taxes made by William Crawford in 1881, giving his notes as aggregating $5000. The master also commented on the unreasonable character of the inference that Crawford would cancel a valid mortgage on good property by taking unsecured notes therefor, especially in view of the fact that his debtor would not pay his interest, and in view of the further fact that Foster already owed John A. Crawford an amount which, with William's claim, approximated the value of Foster's entire estate.

The master further found that the attempt to explain away the testimony and circumstances to which he had referred, on the theory that Crawford was seeking to avoid taxation, and had made an agreement with Foster that he would pay the taxes on the unsecured notes if Crawford would satisfy the mortgage by taking them, was without weight, for it was just as easy for Foster to pay the taxes on the mortgage as upon the notes.

The Circuit Court discussed the evidence at length, and considered the testimony of William Crawford that the first series of notes were exchanged for the second series, and that the latter were unpaid, when, at his brother's suggestion, William gave them to him for the purpose of purchasing the property then conveyed to William by Foster, as improbable in all its essential features. Judge Deady rehearsed the testimony of the various witnesses and pointed out that it overcame that of William, and John A., and Foster, and dwelt upon the improbability that Foster, who between the giving

of the original notes in 1867 and the transfer in 1884 had expended $40,000 on the mill property, had built the brick block in question, which cost probably not less than $12,000, his dwelling-house, and his share of the Albany water works, would allow a mortgage to secure a debt of $10,000 to remain on his mill for seventeen years; and that Crawford would permit the unpaid interest on such debt to accumulate to $6000, and then take a note for the amount without interest or security. And he expressed dissatisfaction with the explanation as to the cancellation of the mortgage, that it was done to avoid the operation of the mortgage tax law of 1882; and held that the decided weight of the evidence supported the conclusion that the mill notes were paid before the conveyance to William Crawford was made, and that therefore that conveyance was without consideration and fraudulent against the creditors of Foster.

We have patiently examined the evidence contained in the record, and it is impossible for us to reverse the decree for error or mistake in the conclusions of the master and the court, depending, as they do, upon the weighing of conflicting testimony, and entitled, as they are, to every reasonable presumption in their favor.

The decree must be

*Affirmed.*