James L. **LESTER**, Administrator of the Estate of Flossie Mae Garner Brown, Deceased, Appellee,

v.

Heyward **McFADDON** and Cameron Lumber Company, Appellants.

No. 12875.

United States Court of Appeals Fourth Circuit.

Argued Feb. 5, 1969.

Decided Sept. 15, 1969.

Lawrence M. Gressette, Jr., St. Matthews, S. C. (Gressette & Gressette, St. Matthews, S. C., on brief), for appellants.

Joseph Rogers, Manning, S. C. (Rogers & Riggs, Manning, S. C., on brief) for appellee.

Before HAYNSWORTH, Chief Judge, and BOREMAN and BUTZNER, Circuit Judges.

HAYNSWORTH, Chief Judge:

The defendant in this wrongful death action questions the District Court's findings of fact and the admission of certain evidence. We think the receipt of the challenged evidence in a case being tried to the Court without a jury was not erroneous and the findings of fact not clearly so within the meaning of Rule 52 of F.R.Civ.P. *Sua sponte*, however, this court raised a substantial jurisdictional question which merits our attention. We conclude that maintenance of the action in the District Court was barred by 28 U.S.C.A. § 1359, but equitable considerations impel us to apply our ruling only prospectively.

In a rural section of South Carolina one foggy evening not very long after sunset, Flossie Mae Garner Brown, with her seven year old daughter, was walking along the shoulder of a highway returning to her own home from her mother's. They were struck by a truck owned by a local lumber company and driven by a

local man. The mother was killed; the daughter injured.

The young girl's action for personal injury was tried before a jury in the state court. The jury found for the defendant, evidently disbelieving the plaintiff's theory that the truck left the main portion of the highway to strike mother and child on the shoulder.[1] The lawyers for the child and the mother's statutory beneficiaries then procured the appointment of James L. Lester, an attorney of Augusta, Georgia, as administrator of the estate for the purpose of bringing an action for wrongful death in the federal court's diversity jurisdiction.

By procuring the appointment as administrator of a citizen of Georgia this local controversy between citizens of South Carolina[2] was superficially converted into a dispute between citizens of different states. The conversion was purely superficial, of course, because the administrator has done little more than lend the use of his name. Nevertheless, there was no objection to the jurisdiction of the District Court on the basis of 28 U.S.C.A. § 1359 which withdraws jurisdiction when "any party has been improperly or collusively made or joined to invoke the jurisdiction of such court."

The absence of objection was apparently the product of the prevalence of an emasculating interpretation of the statute exemplified by such cases as Corabi v. Auto Racing, Inc., 3 Cir., 264 F.2d 784. By the time the case reached this court, however, *Corabi* had been overruled by McSparran v. Weist, 3 Cir., 402 F.2d 867, and we were prompted to raise the question. We requested and received supplemental briefs and held the case pending action by the Supreme Court upon a petition for certiorari in *McSparran,* which was denied on May 19, 1969,[3] and its decision in Kramer v. Caribbean Mills, Inc., 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9, decided on May 5, 1969.

■ In the circumstances of this case the administrator has no stake in the litigation. In South Carolina an action for wrongful death may be maintained only by an executor or administrator of the decedent's estate.[4] The cause of action inheres in the personal representative, and the statutory beneficiaries cannot proceed in their own names. Any amount recovered, however, does not go into the decedent's general estate but is payable, upon receipt by the personal representative, directly to the statutory beneficiaries, here the decedent's numerous children.[5] Had there been assets in the general estate of the decedent, the administrator would have been required to administer them,[6] but there were no such assets here so that this administrator has as yet had no duties to perform.

Unless there is a recovery of some damages in the wrongful death action, the administrator here would never have anything to do; if there is a recovery, his duty is limited to receipt of the funds and their disbursement to a guardian of the statutory beneficiaries. He, of course, has a fiduciary duty to see that the litigation is pressed to a conclusion as long as there is any reasonable expectation of a recovery, but when the foreign administrator is procured by the lawyers handling the litigation he can hardly be expected to ride herd upon them or exercise any effective supervision of their conduct of the litigation. Except that he acquired his authority from the South Carolina Probate Court,

1. The evidence on the subject in the District Court created factual issues as to the negligence of the defendants and the contributory negligence of the decedent. The District Court's resolution of those issues is binding here.

2. The decedent's statutory beneficiaries, as was the decedent, are residents of South Carolina, as are the defendants. They all reside in the same county.

3. Fritzinger v. Weist, 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217.

4. S.C.Code Ann. § 10–1952 (1962). *See, e. g.,* In re Mayo's Estate, 60 S.C. 401, 38 S.E. 634, 54 L.R.A. 660.

5. S.C.Code Ann. § 10–1954 (1962).

6. See generally S.C.Code Ann. §§ 19–451 to 19–482 (1962).

he has no greater standing than the next friend of a minor or incompetent or a guardian ad litem whose residence has not been thought to be controlling of the question of diversity.[7]

Such a person is indeed a "straw party" as the *McSparran* court characterized the administrator there. We think his appointment for the purpose of creating apparent diversity of citizenship was an improper manufacture of jurisdiction within the meaning of § 1359. Any other interpretation would render a portion of the statute impotent[8] because it was clearly intended for the statute to apply to manufactured situations created by other means than assignments. We need not give the statute a reading which would frustrate the congressional intention to exclude from the diversity jurisdiction purely local controversies with no more than a contrived interstate appearance.

It is unnecessary here to review the history of the problem or the general reasons which lead us to our conclusion for they are fully developed in *McSparran*. We adopt the reasoning of the majority opinion of the en banc court in that case.

Our conclusion, however, is reinforced by the Supreme Court's subsequent decision in Kramer v. Caribbean Mills, Inc., 394 U.S. 823, 89 S.Ct. 1487. Since the Supreme Court in *Kramer* reserved this question, it substantially eliminated the effect of earlier dicta.

The decisions of the Supreme Court in Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co., 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681, and Mecom v. Fitzsimmons Co., 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233, have no direct bearing upon the problem, though both opinions contain dicta which substantially influenced the lower courts to give to § 1359 a very restrictive reading. In the former case, a Kentucky corporation had been reincorporated in Tennessee in an attempt to create diversity of citizenship between it and the defendant, a Kentucky corporation. Earlier the Supreme Court had held purely pretensive incorporations insufficient to create diversity of citizenship,[9] but the reincorporation of *Black & White Taxicab* was real. At the time the action was commenced there was no longer a Kentucky corporation. All of the assets of the former Kentucky corporation were vested in the Tennessee corporation, and the Tennessee corporation, the plaintiff, was the one entitled to enjoy the fruits of the litigation. In *Mecom* the Court held there was no diversity jurisdiction in an action for wrongful death when, for the purpose of defeating federal jurisdiction the action was brought by an administrator having the same citizenship as the defendant. Section 1359, of course, does not apply to the *Mecom* situation since it attempts only to limit federal jurisdiction and not to protect it.

In both *Black & White Taxicab* and *Mecom*, however, the Court used language indicating that it is enough if the action be brought by the real party in interest and that the courts should not inquire into the motives underlying their

---

7. *See, e. g.,* Appelt v. Whitty, 7 Cir., 286 F.2d 135.

8. 28 U.S.C.A. § 1359 forbids collusive or improper manufacture of jurisdiction "by assignment *or otherwise.*" The italicized portion is virtually without meaning if it does not apply to a situation such as this. Presumably it would still apply to a sham incorporation within a particular state to create diversity. *See, e. -g.,* Lehigh Mining & Mfg. Co. v. Kelly, 160 U.S. 327, 16 S.Ct. 307, 40 L.Ed. 444. The phrase might additionally apply to a stockholder's derivative suit when the corporation refuses to bring suit only because it wishes to create diversity. *See, e. g.,* Detroit v. Dean, 106 U.S. 537, 1 S.Ct. 560, 27 L.Ed. 300. *But see* Wright, Federal Courts § 73 at 277 (1963) which indicates that the special venue statute, 28 U.S.C.A. § 1401, has been considered by some courts to have a jurisdictional element. If that view prevail, then § 1359 would add nothing in a case such as *Dean.*

9. Lehigh Mining & Mfg. Co. v. Kelly, 160 U.S. 327, 16 S.Ct. 307, 40 L.Ed. 444 and Miller & Lux, Inc. v. East Side Canal & Irrigation Co., 211 U.S. 293, 29 S.Ct. 111, 53 L.Ed. 189.

creation or appointment. It is that language which largely influenced the course of decision in the lower courts until *McSparran.*

In Kramer v. Caribbean Mills, Inc., 394 U.S. 823, 89 S.Ct. 1487, the Supreme Court held that an assignment of a claim for the purpose of creating diversity jurisdiction was improper or collusive within the meaning of the statute. It reserved the question "whether in cases in which suit is required to be brought by an administrator or guardian, a motive to create diversity jurisdiction renders the appointment of an out-of-state representative 'improper' or 'collusive' " within the meaning of § 1359. It pointed out certain differences in the situations, stating that in cases involving personal representatives someone must be appointed before suit can be brought and he owes his appointment and his authority to a decree of a state court, and that, depending on the kind of guardian or administrator he is, his powers and his authority may vary over a considerable range.

These differences, of course, are obvious, but the fact that the beneficiaries of the action may not proceed in their own name, hardly amounts to a distinction when they or their legal advisers procure the appointment of an out-of-state administrator who had no former connections with the decedent solely for the purpose of creating diversity of citizenship. The act is as voluntary and deliberate as is that of an assignor in the Kramer v. Caribbean Mills situation. Nor does it seem to us to matter in the least that the administrator owes his appointment to the decree of a probate court in South Carolina. That decree is not under attack. The appointment may be assumed to be valid in every respect and the administrator perfectly free to prosecute the action in the state court. The question here is simply whether from the circumstances of his appoint-ment after consideration of his authority and his duties, the statute proscribes his proceeding in the federal courts rather than in the state courts. That seems clearly a federal question, the answer to which need not be influenced by the fact that the state court has authorized him to proceed in the litigation in a proper manner in a proper court, the state court being unquestionably a proper one.

As we have outlined them above, the duties of the administrator and his authority are no greater than those of the assignee in the Kramer v. Caribbean Mills situation. Each is authorized nominally, at least, to prosecute the action in his own name and is obligated to remit the net proceeds after payment of all expenses, including compensation to the assignee or administrator, to the beneficiary.

We thus find no distinction between this situation and that of the assignee which the Supreme Court considered in Kramer v. Caribbean Mills. After the Supreme Court's reservation of this question in Kramer v. Caribbean Mills the substantive similarity between this situation and that considered in *Kramer*, leads us to follow *Kramer* rather than the dicta in *Black & White Taxicab* and *Mecom.*

Under Rule 17, Federal Rules of Civil Procedure, the administrator is expressly authorized to bring suit in his own name without joining his beneficiaries. Procedurally he is the real party in interest. The rule is but a restatement of a well established doctrine, for it was held very early that an administrator was the real party in interest in the sense of entitlement to proceed in his own name. Chappedelaine v. Dechenaux, 8 U.S. (4 Cranch) 306, 2 L.Ed. 629, and Childress v. Emory, 21 U.S. (8 Wheat.) 642, 5 L.Ed. 705.[10] It was in that sense that *Mecom* held that the administrator was the real party in interest entitled to maintain the action in his own name,

10. Rule 82 F.R.C.P. expressly declares that the rules do not extend or limit the jurisdiction of the district courts; they are procedural only. The judicial antecedents of Rule 17(a) were similarly limited.

though the court recognized that the beneficiaries were the "parties in interest." The plaintiff in *Black & White Taxicab* was the real party in interest in a much larger sense than the procedural one, however, for it was the only one on the plaintiff's side of the litigation who had a substantial stake in its outcome.

■ If the nominal plaintiff is a real party in interest in that latter sense, if his interest in the litigation is substantive rather than procedural only, § 1359 well may have no application.[11] If he has no stake in the outcome, if he is a real party in interest only in the narrow procedural sense of those words and his appointment was secured solely for the purpose of creating diversity of citizenship, the apparent diversity is pretensive. The pretensive making of a party is improper within the meaning of § 1359.

The American Law Institute has a better solution, one much more easily administered. Under its proposed § 1301, the citizenship of a decedent, a minor or an incompetent would be attributed to his representative.[12] That proposal requires congressional action. Meanwhile, however, no sound reason appears why the courts should continue to read existing § 1359 so ungenerously as largely to deprive it of its intended meaning.

■ Although we decide that a district court has no jurisdiction in a case of this kind, we apply the new rule prospectively. Equitable considerations require the exemption of the present case and of any other case now pending in the Fourth Circuit if dismissal would not leave the plaintiff a reasonable opportunity to refile a timely action in a state court or if dismissal would impose an undue burden in requiring the relitigation of issues already fully litigated.

At the time of trial, the District Court, the plaintiff and the defendant all thought the action was properly in the District Court. There was a long line of consistent holdings which supported their view. Their reliance upon them was so complete that no one even thought of raising a jurisdictional question. Relying as they did upon what seemed the settled rule, the case was fully tried to judgment. Dismissal now would only occasion a needless, duplicitous retrial and a burden of expense which the penniless, infant, statutory beneficiaries cannot afford.

In declining to apply the rule we now espouse to this or any other case now pending in which there are overriding equitable considerations, we depart from the Blackstonian view that judges only discover the law and that any previous

---

11. It is the lack of a stake in the outcome coupled with the motive to bring into a federal court a local action normally triable only in a state court which is the common thread of the cases holding actions collusively or improperly brought. *See* Smith v. Sperling, 354 U. S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205; Southern Realty Investment Co. v. Walker, 211 U.S. 603, 29 S.Ct. 211, 53 L.Ed. 346; Miller & Lux, Inc. v. East Side Canal & Irrigation Co., 211 U.S. 293, 29 S.Ct. 111, 53 L.Ed. 189; Lehigh Mining & Mfg. Co. v. Kelly, 160 U.S. 327, 16 S.Ct. 307, 40 L.Ed. 444; Little v. Giles, 118 U.S. 596, 7 S.Ct. 32, 30 L.Ed. 269; Hayden v. Manning, 106 U.S. 586, 1 S.Ct. 617, 27 L.Ed. 306; Detroit v. Dean, 106 U.S. 537, 1 S.Ct. 560, 27 L. Ed. 300; Barney v. City of Baltimore, 73 U.S. (6 Wall.) 280, 18 L.Ed. 825.

Cf., Lanier v. Nash, 121 U.S. 404, 7 S. Ct. 919, 30 L.Ed. 947; Williams v. Nottawa, 104 U.S. 209, 26 L.Ed. 719. If either factor is missing, the suit is not collusive or improper. *See, e. g.,* Crawford v. Neal, 144 U.S. 585, 12 S.Ct. 759, 36 L.Ed. 552 (transferee had substantial interest); Manhattan Life Ins. Co. v. Broughton, 109 U.S. 121, 3 S.Ct. 99, 27 L.Ed. 878 (no improper motive to bring action in federal court since transferor herself was of diverse citizenship).

12. The American Law Institute: Study of the Division of Jurisdiction between State and Federal Courts, § 1301(b)(4). *See* 46 F.R.D. 141, 143. Under this proposal no preliminary question of motivation for the appointment of the out-of-state administrator need be examined in determining whether jurisdiction exists.

inconsistent declaration was a nullity.[13] The theory is unrealistic in such a context as this. The law does change, and man relies upon it at the time of action, as he must. The law need not, it should not leave him naked and defenseless against the biting winds of new discovery which, after his action, removes what had been the clear basis of his reliance. When necessary to avoid such harm, judicial decisions introducing new rules may be given prospective application as new statutory rules usually are.

The Blackstonian theory is not entirely fictional. If not entirely true, it is not wholly false. It is the embodiment of the principle that judges are not free to indulge their whims, but are governed by law, a body of principles to be applied with concern for the functioning of the judicial system and the effectiveness of its processes. It is a popular symbol underpinning general respect for the courts and obedience to their orders. It has in it much literal truth in the context of all but a few exceptional cases when the courts are about their usual business of settling controversies in terms of the law as it is declared at the moment of decision.[14] It is not a shackle, however. In the exceptional case it does not compel a court confronted with earlier misreadings of a statute to choose between perpetuation of the error and casting inequitable burdens upon litigants who had acted in justifiable reliance upon the earlier reading.

Nothing in the Constitution prevents use of the technique of prospective limitation or prospective overruling.[15] It is a developing technique of great usefulness in lending protection to those who had placed their reliance upon the earlier rule against the harsh impact of *ex post facto* change.[16] It has been employed by many courts.[17] The Supreme Court has made the technique widely familiar as a limitation upon the retroactivity of even constitutional doctrine.[18]

The statute speaks in jurisdictional terms which pose some conceptual difficulty in the way of affirmance of a judgment in a case to which § 1359 is applicable. The case, however, is within the general jurisdiction conferred by § 1332, and § 1359 may properly be regarded as an authorization and directive to control and limit abuses in the invocation of conferred jurisdiction. Even if it be jurisdictional, diversity of citizenship is but a quasi-jurisdictional fact. A judgment based upon an erroneous finding of diversity is not void and is immune from collateral attack.[19] If the principle of prospective overruling is appropriate in the adjudication of constitutional rights, it is hardly inappropriate here.

13. "For if it be found that the former decision is manifestly absurd or unjust, it is declared, not that such a sentence was *bad law*, but that it was *not law.* * * *" 1 Blackstone, Commentaries on the Laws of England 70 (1765).

14. As to the validity and utility of the Blackstonian theory, see Mishkin, The Supreme Court, 1964 Term, Foreword: The High Court, The Great Writ, and the Due Process of Time and Law, 79 Harv.L.Rev. 56 (1965).

15. Great N. Ry. Co. v. Sunburst Oil & Ref. Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360.

16. For a general discussion of the technique, its variations and the history of its development, see Schaefer, The Control of "Sunbursts": Techniques of Prospective Overruling, 42 N.Y.U.L.Rev. 631.

17. *See, e. g.*, the cases collected in Annot., 10 A.L.R.3d 1371 (1966).

18. Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248; De Stefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308; Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L. Ed.2d 1199; Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882; Tehan v. United States ex rel. Shott, 382 U.S. 406, 416, 86 S.Ct. 459, 15 L. Ed.2d 453; Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601.

19. Noble v. Union River Logging R.R., 147 U.S. 165, 173–174, 13 S.Ct. 271, 37 L.Ed. 123; Des Moines Nav. & R.R. Co. v. Iowa Homestead Co., 123 U.S. 552, 8 S.Ct. 217, 31 L.Ed. 202.

Indeed, in this situation, use of the technique has a particular appropriateness. The quasi-jurisdictional fact question turns on the propriety of the procurement of the out-of-state administrator. It is very difficult to say that it was improper or collusive at the time that it was done, when all of the decided cases held it was neither. After forewarning, when the sanction of decision is removed, such pretensiveness may readily be declared improper within the meaning of the statute.

In this precise situation, the Third Circuit announced in *McSparran*, that its decision would be given a prospective application only, and in the companion case of Esposito v. Emery, 3 Cir., 402 F.2d 878, it refused to apply the rule retroactively to a case when it appeared that commencement of suit in the state court would have been barred by limitations. In agreement with the Third Circuit, we conclude that we have such discretion.

Because of the inequity in applying the new rule in this case, the judgment will be affirmed.

Affirmed.