# HISEY *v.* PETERS.

PATENTS; INTERFERENCES; PRIORITY OF INVENTION ; APPEALS IN
   PATENT CASES ; PATENT OFFICE, EFFECT OF RULING OF ;
                     EVIDENCE, WEIGHT OF.

1. An interference is a proceeding conducted in the Patent Office for
   the purpose of determining the question of priority of invention
   between two or more parties, each of whom is seeking a patent
   for some invention, or between two or more parties, one of
   whom is seeking a patent for an invention covered by a prior
   patent not yet expired.

2. Only the question of priority of invention is involved in an interfer-
   ence proceeding ; and no party to it can properly raise the ques-
   tion that the issues of the interference do not cover patentable
   inventions.

3. The rights of appeal in the case of the refusal of a patent upon the
   ground of non-patentability of the claim, and refusal of a patent
   because of interference with a prior right of invention, are dis-
   tinct rights, and the latter does not involve the former ; *con-
   struing* R. S. U. S., sec. 4911, and sec. 9 of the act of Congress
   of February 9, 1893.

4. Where the question of priority of invention has been passed upon
   by the various officials of the Patent Office, the rulings of
   that office must on appeal be allowed to stand unless the appel-
   lant is shown by the evidence beyond any reasonable doubt to
   have been the first inventor.

5. Where the proof of prior conception in an interference proceeding
   rests virtually upon the imperfectly supported testimony of the
   party alleging it, such evidence is not sufficient to show priority,
   especially where there are circumstances throwing doubt upon
   the testimony.

No. 17.   Patent Appeals.   Submitted November 14, 1894. , Decided
   April 1, 1895.

HEARING on an appeal from a decision of the Commis-
sioner of Patents in a patent interference proceeding.   *Af-
firmed.*

The facts are sufficiently stated in the opinion.

*Mr. E. M. Marble* for the appellant.

*Mr. Frank T. Brown* for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This case is brought into this court on appeal from the rulings of the Commissioner of Patents, on issues of interference declared in the Patent Office, as to priority of invention as between the respective claims of the appellant, Charles S. Hisey, and the appellee, Gershom Moore Peters, for patents for an improvement in cartridge-loading machines. The issues of interference were ruled in favor of the claim of the appellee, and from such ruling the appellant, Hisey, has taken this appeal.

The issues as declared are the following:

" 1. In a cartridge-loading machine, the combination, with the shell-carrier, of the reciprocating tool-holder, and a constantly revolving crimper located in the path of the tool-holder, whereby the tool-holder on its descent depresses the crimper.

" 2. In a cartridge-loading machine, the combination, with a shell-carrier, of the reciprocating tool-holder, a constantly revolving crimper located in the path of the tool-holder for depressing said crimper, and a spring for raising said crimper."

The invention involved in this alleged interference respects alone the mechanism and combination of the crimping device, instead of the former device in use on cartridge-loading machines, of an indenter of the cartridge.

It appears that, on June 24th, 1889, Hisey, the appellant, made application to the Patent Office for a patent for his alleged invention of an automatic cartridge-loading machine of the endless-belt type, for loading shot-gun or sporting cartridges, and this application comprehended or embraced the crimping mechanism or appliance.

It also appears that, on July 31, 1891, the appellee, Peters, made application to the Patent Office for a patent for

improvement in crimpers for cartridge-loading machines. This application is alleged to be a division of a previous application filed by him on September 28, 1889.

These applications thus pending in the office, the Commissioner of Patents, on December 21, 1891, declared an interference between the applications of the parties, and framed the issues of interference that we have just stated.

The well known and defined meaning of an interference is, that it is a proceeding conducted in the Patent Office for the purpose of determining the question of priority of invention between two or more parties, each of whom is seeking a patent for some invention, or between two or more parties, one of whom is seeking a patent for an invention covered by a prior patent not yet expired. This is a question most generally of pure fact, and involves only the consideration of priority of invention.

In this case the appellant has assigned many reasons for the appeal, but these he reduces to two principal propositions or questions :

*First*, Do the issues of this interference cover patentable inventions ?

*Second*, If so, which of the parties to this interference is entitled to be adjudged the prior inventor of said inventions ?

1. With respect to the first of these questions we do not think it is properly presented on this appeal. This appeal presents a question of interference simply. The question of patentability of the claim for invention was referred to and passed upon by the primary examiner in the Patent Office, who is the expert as to the state of the art involved, and it was not until that examination was had and favorably reported, that the interference was or could be declared. The appellant making claim for an alleged patentable invention, is not to be heard to urge non-patentability of his claim after it had been placed in interference with another claim. He is effectually estopped on that question by reason of his own affirmative assertion that his claim is

patentable; and if his own claim is patentable that with which it would interfere may be equally so, if priority of invention be shown.   Moreover, the rights of appeal in case of the refusal of a patent upon the ground of non-patentability of the claim, and refusal of a patent because of interference with a prior right of invention, are distinct rights and the latter does not involve the former.   This is clearly indicated in the Revised Statutes of the United States, sec. 4911, and in section 9 of the act of Congress of February 9, 1893, providing for the organization of this court.

2. Then, with respect to the second question, that of priority of invention.   This question, being one of fact, has been very fully considered by the officials of the Patent Office.   The examiner of interferences, the board of examiners in chief, and the Commissioner of Patents, on successive appeals, have all concurred in their findings that the appellee is entitled to priority of invention.

The appellant alleges that he conceived the invention involved in this controversy in April, 1888, and the appellee alleges that he conceived the invention in August, 1888, and that he, without delay, proceeded to put the invention into practical form and operation, and thus demonstrated its utility.   He swears, and he is supported in his testimony, that in November, 1888, he had constructed two completed machines, with the crimper improvement, and had operated them successfully.

Upon a case thus presented on appeal, upon whom is the *onus* of proof imposed to establish the priority of invention? In other words, upon the case coming into this court on appeal, after the question of fact has been examined and ruled upon as in this case, what is the rational presumption to be indulged as to the conclusion of fact?   We think it is established beyond controversy, that, in a case so presented, the decision of the Patent Office must stand unless the evidence shows beyond any reasonable doubt that the appellant was the first inventor.   *Coffin* v. *Ogden*, 18 Wall. 120.   This principle is stated with great clearness by the

Supreme Court of the United States, in the recent case of *Morgan* v. *Daniels,* 153 U. S. 120, 123, 124. That was an interference proceeding taken into a court of equity, under section 4915, Revised Statutes of the United States, by the party against whom the Patent Office officials had ruled, on his application for a patent as the sole and first inventor of an improvement in machines for coiling wire. In that case, the examiners and the Commissioner of Patents, with some diversity of views, held that the applicant was not the first inventor. Whereupon he filed his bill, and asked the court of equity to reverse the rulings of the Patent Office, and to direct the Commissioner of Patents to issue to him a patent for the invention as specified in his claim. In disposing of the case, and denying the relief prayed, the Supreme Court held, that when a question between contending parties, as to priority of invention, has been decided in the Patent Office, the decision there made must be accepted as controlling, *upon that question of fact,* in any subsequent suit or proceeding between the same parties, unless the contrary be established by testimony which, in character and amount, carries thorough conviction. The court said, " There is always a presumption in favor of that which has once been decided, and that presumption is often relied upon to justify an appellate court in sustaining the decision below. Thus, in *Crawford* v. *Neal,* 144 U. S. 585, 596, it was said : ' The cause was referred to a master to take testimony therein and to report to the court his findings of fact and his conclusions of law thereon. This he did, and the court, after a review of the evidence, concurred in his findings and conclusions. Clearly, then, they are to be taken as presumptively correct, and unless some obvious error has intervened in the application of the law, or some serious or important mistake has been made in the consideration of the evidence, the decree should be permitted to stand.' " See, also, case of *Furrer* v. *Ferris,* 145 U. S. 132.

But, irrespective of this *onus* cast upon the appellant of showing clearly the existence of error in the conclusions

arrived at by the officials in the Patent Office, *as to the facts of the case*, we have no difficulty in arriving at the same conclusion on the question of priority of invention, upon the evidence in this record.

It is not controverted that the original application of the appellee, Peters, was filed September 28th, 1889, of which the application in the present interference is a division. Nor is it controverted that he conceived the invention in September, 1888, and that he reduced it to practice in November, 1888, and that he made public use of it, and continued such use, resulting in successful product of the invention, down to the time of the evidence taken in this case. Of these facts the evidence is abundant.

Hisey, the appellant, claims to have conceived the invention in April, 1888, though he did not reduce it to practice until September, 1889; but because the invention was conceived by him in April, 1888, he claims priority over the claim of the appellee. The proof of the fact of this prior conception of the invention rests, virtually, upon the imperfectly supported assertion of Hisey himself; and this, according to the repeated rulings by the Commissioners of Patents, is not deemed sufficient evidence of the fact of priority in a case of interference; and especially not, where there are circumstances that throw doubt upon the accuracy of the allegation or statement. *Bering* v. *Howorth*, C. D. 1878, p. 84; *Slade* v. *Blair*, C. D. 1880, p. 25; *Stevens* v. *Putnam*, C. D. 1880, p. 164. The witnesses to whom Hisey refers to corroborate his statement, as to the date of his invention, and to whom, he says, he explained the invention before he left for Europe in June, 1888, do not bear him out, as to the crimper device; and the testimony of Stickney and Siegel, as to the explanation of Hisey, and the exhibition of the drawing or sketch of the invention in the pass-book, which occurred on board of the German steamship "Aller," at sea, can hardly be accepted as conclusive of the fact that the drawing shown did embrace the crimper mechanism as now set forth in the claim involved

in this interference.    While it is the impression of Mr.
Stickney, the most important of these witnesses, that the
sketch in the pass-book embraced the crimper mechanism,
his testimony must be considered with reference to the cir-
cumstances under which he testified.    We entirely agree
with the Commissioner of Patents in his estimate of the
value of Stickney's testimony.    He testified to the details of
the conversation four years and a half after it occurred, and
but one day after inspecting the four sheets of drawings
which contain the illustration of the crimper and cartridge-
loading machine combined.    His cross-examination re-
veals the circumstance that he paid but slight attention to
the tracing exhibited to him on board the ship, and that his
attention was particularly directed to the peculiar chain and
wheel, and that he was not a close observer of the other
parts of the sketch.    The whole matter between the wit-
nesses and Hisey rested in mere oral discourse ; and it sub-
jects the recollection of these witnesses to great doubt of
its accuracy after such lapse of time.    The only thing that
could render this matter certain and definite would be the
pass-book, containing the sketch or drawing said to have
been exhibited to Stickney ; but this, though most impor-
tant and material on this question, as a medium of evidence,
has not been produced, and is said to have been lost.    This,
of itself, gives rise to a strong adverse inference, in the ab-
sence of a full and satisfactory account of the loss or de-
struction of the book.    There does not appear to have been
any special care taken of this book, containing what is now
said to have been the drawing or sketch of the invention ;
and hence we may infer but little importance was attached
to its preservation.

But in addition to this, Hisey claims to have brought
drawings and tracings of the invention with him from Ger-
many, on his return to this country about April 1st, 1889,
but they are not produced, and it is not shown what they
contain, except by way of inference from secondary evidence.
Why were the originals of these drawings and tracings not

produced? There is no sufficient reason shown for their absence; and their non-production can give rise to but one inference, and that is adverse to the claim of the appellant. But the still more significant fact is the contract made in Germany, with Tenner, on the 11th of July, 1888, months after the alleged conception of the invention, and after the alleged drawing shown to Stickney on the ship "Aller," on his voyage to Germany. That contract recited that Hisey had invented a certain novel and useful automatic cartridge-loading machine, the principal feature of which consisted in an endless chain, and which was adapted alike for pasteboard or metallic shells, regardless of gauge and size, and for which invention he was desirous of securing patents in the United States of America, and the European countries; and yet no reference is made to the combined cartridge-loading machine and crimper, although Hisey claims to have fully completed the invention now in controversy, before that contract was executed. He did take out a patent in Great Britain, and other foreign patents, in 1888, on cartridge-loading machines for shot cartridges, but none of which combined the crimper device, but all had indenters. And it appears, according to the statement of the Commissioner of Patents, that Hisey, on the 8th of September, 1888, made application to the Patent Office here in Washington for a patent upon his endless chain cartridge-loading machine, but the drawings failed to disclose a crimper or crimper mechanism as part of the combined machine, such as is now claimed. These facts are not reconcilable with the present claim of Hisey to priority of invention; and we think the fact of priority of invention was properly found by the examiners and Commissioner of Patents in favor of the appellee, Peters; and we shall therefore affirm the decision of the Commissioner of Patents, and direct that a certificate of the proceedings and decision of the case in this court to be returned to the Commissioner of Patents, to be entered of record in the Patent Office, as directed by the statute; and it is so ordered.

*Affirmed.*