# KINCHELOE v. MURRAY.

FRAUDULENT CONVEYANCES; VALUABLE CONSIDERATION.

1. A judgment creditor who knew of the existence of two deeds of trust aggregating $3,000, upon the property of his debtor, worth $4,000, and by a little inquiry could have discovered that the debtor's son, who did not know of the judgment debt, was about to buy the property in order to prevent a threatened foreclosure of these trusts, will not be permitted after waiting until the son, in good faith, has purchased the property for a consideration consisting of the payment of accrued interest and other charges, and the assumption of the trusts, to maintain a bill in equity to vacate the parent's conveyance on the ground of fraud. (Citing *Barber* v. *Wilds*, 33 App. D. C. 150.)

2. The assumption of existing deeds of trusts on the property purchased is a valuable consideration for the conveyance of real estate.

No. 2465.   Submitted December 4, 1912.   Decided January 6, 1913.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia dismissing a bill in equity to set aside an alleged fraudulent conveyance.

*Affirmed.*

The facts are stated in the opinion.

*Mr. George C. Gertman* and *Mr. John Ridout* for the appellant.

*Mr. P. J. Ryan* and *Mr. Thomas H. Patterson* for the appellees.

Mr. Justice ROBB delivered the opinion of the Court:

Appeal from a decree of the supreme court of the District dismissing appellant's bill to set aside a deed made by the ap-

pellee Sarah J. Murray to appellee Don L. Murray, her son, and to have the property sold and the equity therein, less certain disbursements of said Don L. Murray, applied to the payment of a judgment for $625, obtained against Mrs. Murray and another son.

Mrs. Murray is about seventy years of age and apparently little versed in business matters. Her husband died in about 1904, at which time her home at 1514 U street, N. W., in this city, being improved lot numbered 84 of Diller B. Groff's subdivision of square numbered 190, was unencumbered. Some time thereafter two deeds of trust were placed upon the property, one for $2,000 and the other for $1,000. The interest on both trusts being in arrears, notice was served upon Mrs Murray that foreclosure proceedings had been or would be instituted. She thereupon applied to her son Don Murray for advice and assistance. Learning then, for the first time, of the encumbrances on the property, he communicated with the holder of the second trust and was informed of the imminence of foreclosure proceedings. He then consulted counsel, and it was determined that he would purchase the property, which he did. On August 8, 1911, the deed of conveyance from his mother to him was executed, the recited consideration being $10. In addition to this, he was to assume the payment of the two deeds of trust, pay all existing charges, and provide his mother a home. It is stipulated that the value of the property at that time "would not exceed $4,000." It is further stipulated that in addition to assuming the two deeds of trust, aggregating $3,000, Don Murray paid $181.21 in cash, the same representing interest and other charges. This amount, it is conceded, should be returned to him in the event the conveyance is set aside. He also paid $70 attorneys' fee to the attorney who represented him in the adjustment of the matter. On August 24th, in accordance with an arrangement previously made, Don Murray conveyed said property to the American Security & Trust Company, to secure the payment of $3,000, borrowed by Mr. Murray to liquidate the two prior trusts.

It appears that sometime in 1910 Mrs. Murray commenced

signing notes as surety for another son, Harry Murray. These notes were renewed from time to time. On the 3d of November, 1911, appellant obtained judgment against Mrs. Murray and her son Harry for the sum of $625, and interest, upon a note for $150, dated June 15, 1911, one dated July 15, 1911, for $300, and one dated August 21, 1911, for $175. Whether these notes were all renewals of notes previously given does not definitely appear. Some time prior to bringing suit on these notes, appellant thinks it was along the latter part of July, 1911, appellant interviewed Mrs. Murray at her home, and suggested the taking up of the two trusts on the property and replacing them with another, which should include the amount due him. This was the first time Mrs. Murray saw appellant, and she seems to have had a very vague understanding of the character of her transactions with her son Harry. Appellant subsequently called up the son Don on the telephone, but not until after the property had been conveyed to Don.

The theory of the bill is that the deed from Mrs. Murray to her son, her equity in the property conveyed representing her entire estate, was for the purpose and with the intent to hinder, delay, and defraud appellant in the collection of the indebtedness of Mrs. Murray to him, and that said son had actual notice of the fraudulent intent of his mother and actively participated therein. Both Mrs. Murray and her son, in their answers, deny all averments of fraud, and their testimony is explicit to the same effect. Mr. Murray explicitly testified that at the time he took the conveyance of this property he knew nothing of his mother's indebtedness to appellant, and we are convinced of the integrity of his statement. The situation confronting appellees at the time was this: The home of this elderly lady was about to be taken from her by foreclosure proceedings. The son, as was natural, was interested in preserving a, home for his mother. He consulted counsel and, acting upon his advice, purchased the property in good faith. He assumed the existing trusts thereon, which was a valuable consideration. *Crawford* v. *Neal,* 144 U. S. 585, 36 L. ed. 552, 12 Sup. Ct. Rep. 759. In addition, he admittedly paid almost $200 in cash

.and took care of his mother from that time on.  It is conceded by appellees that the agreement for future support was not good .as to existing creditors.  But it is insisted that there was no :such disparity between the actual value of the property and the .consideration actually paid as to shock the conscience of a court .of equity.  It is conceded by appellant that mere inadequacy .of price, unattended by suspicious circumstances, will not establish fraud.  Here the disparity between the true value and ·the price paid is so small as to amount to nothing more than a .circumstance tending to indicate lack of good faith.  *Barber* v. *Wilds,* 33 App. D. C. 150.  But, when all the other facts and .circumstances are considered, this circumstance becomes unimportant.  What action other than that taken was open to :appellees in the circumstances ?  Foreclosure proceedings were ·imminent.  The son, knowing nothing of his mother's unwise :assistance of another son,—that is, knowing nothing of his mother's indebtedness to appellant,—was called upon by his ·mother to assist her in saving the old home.  What was more natural than that he should adopt the suggestion of counsel :and purchase ·it, and thereafter provide a home for his mother ?  It is in evidence, and there is no evidence to the contrary, that ·the property had actually been advertised for sale under one of ·the trusts.  Appellant, according to his own testimony, knew of the existence of these trusts, and a little inquiry on his part ·would have developed the real situation.  Having waited until the son Don, in good faith, purchased the property for a reason-·able consideration, he cannot now be permitted to attack the· ·transaction.  The decree will therefore be affirmed, with costs.

                                        *Affirmed.*