## *IN RE* ESTATE OF MAYO.

1. ADMINISTRATION — MOTION TO REVOKE ADMINISTRATION — LORD CAMPBELL'S ACT—PROBATE COURT—NEGLIGENT KILLING.—A RAILROAD COMPANY sued by administrator of decedent for negligent killing, under Lord Campbell's Act, cannot move in probate court to revoke letters of administration except upon jurisdictional defects apparent on the face of the record, and the order herein granting administration, showing that the deceased was a resident of Florence County, that he died therein and had assets there, gave probate court of Florence County jurisdiction to grant administration. MR. CHIEF JUSTICE MCIVER *dissents as to the latter.*

2. CAUSE OF ACTION—LORD CAMPBELL'S ACT—ADMINISTRATION—AD-
MINISTRATOR.—The action permitted by Lord Campbell's Act by
administrator of decedent killed by negligence of another, is not the
survival of a cause of action had by the deceased in his lifetime, but
is a new cause of action, and this will warrant granting administra-
tion by probate court in this State to a resident on estate of a non-
resident killed by a railroad resident of this State, even if such
decedent had no estate here. MR. CHIEF JUSTICE MCIVER *dissents*
*as to the latter.*

Before GAGE, J., Florence, July, 1900.	Affirmed.

Motion by the Northeastern Railroad Co. in the estate of
James M. Mayo to revoke letters of administration granted
to J. W. McCown, based on the following petition in the
probate court:

"The Northeastern Railroad Company, petitioner herein,
respectfully shows to this Court:

"I. That your petitioner is a railroad corporation, duly
organized under the laws of the State of South Carolina,
carrying on the business of a common carrier on its line of
road in this State.

"II. That heretofore, on the 24th day of November, 1897,
J. W. McCown filed his petition in this court in the above
entitled proceeding, praying that letters of administration be
granted him by this court upon the estate of James M. Mayo,
deceased, a copy of which petition is hereto annexed as a part
hereof.

"III. That on the 16th day of December, 1897, by final
order or judgment of this court, letters of administration
were granted in the above entitled proceedings to the said J.
W. McCown, as administrator upon the estate of the said
James M. Mayo, styled and recited in said judgment as 'late
of Florence County,' and the said J. W. McCown, on the
said 16th day of December, 1897, took the usual oath pre-
scribed for administrators, as will appear by a copy of the
said judgment and oath hereto annexed as a part hereof.
Said judgment so rendered and said letters so issued were

granted upon the said *ex parte* application of the said J. W. McCown.

"IV. That the said James M. Mayo, at the time of his death, on the 12th day of June, 1897, was not a resident or inhabitant of this State nor a citizen thereof, but at the time of his death, and long prior thereto, was a resident, an inhabitant and citizen of the State of Florida, with his residence in the city of Ocala, county of Marion, in said State of Florida.

"V. That the said James M. Mayo died intestate, leaving no estate or property of any description, real or personal, within the limits of the State of South Carolina or within the jurisdiction of this court, either at the time of his death or at the time of the grant of said letters of administration or since.

"VI. That it is alleged in the said petition of the said J. W. McCown that the said James M. Mayo died intestate, leaving his widow and children named in said petition, residents of the State of Florida, and that he left no property within the jurisdiction of this court.

"VII. That the said J. W. McCown, so styling himself as administrator of the estate of said James M. Mayo, on or about the 27th day of December, 1897, commenced an action as such against your petitioner for the sum of $25,000 damages in the Court of Common Pleas for the county of Florence, for the alleged negligent killing of said James M. Mayo by your petitioner in the city of Florence, on the 12th day of June, 1897, in which action it is alleged by the said J. W. McCown that the said James M. Mayo 'was a stranger in the city of Florence.' · Your petitioner has appeared and answered the complaint in said action, and your petitioner alleges that the death of the said James M. Mayo was not caused by the negligence of your petitioner, as alleged in the complaint of said action. By an order in said cause, made on the 8th of February, 1899, the place of trial of said action was changed from the county of Florence to the county of

Williamsburg, in this State, and said cause is now pending in said court.

"VIII. Your petitioner was not a party to the proceedings herein culminating in the grant of said administration to the said J. W. McCown, and had no notice thereof, but said order was made and said letters were granted solely upon the *ex parte* application of the said J. W. McCown, unsupported by any evidence showing or tending to show that the said James M. Mayo was either a resident or an inhabitant of the county of Florence, or had any property or estate therein to be administered upon or within the jurisdiction of this court.

"IX. Your petitioner is interested in said final order made herein appointing the said J. W. McCown administrator of the estate of the said James M. Mayo, and is and will be injured thereby. The said final order and said letters of administration so made and granted are illegal, null and void, and this Court was without jurisdiction to issue the same. Under the authority of the said illegal appointment the said J. W. McCown has already put your petitioner to great inconvenience, costs and expense by the institution of the said vexatious suit for damages. Said J. W. McCown has and can have no power or authority to commence or prosecute the said action for damages, which said action can only be brought by the party and in the manner prescribed in sec. 2316 of the Revised Statutes (1893) of South Carolina. Even if said unliquidated claim for damages was a valid claim, which it is not, such claim is not an asset of the estate of the said James M. Mayo.

"Wherefore, your petitioner prays that the said final order appointing the said J. W. McCown administrator be vacated and set aside, and the said letters of administration issued to him be revoked and cancelled."

Upon hearing the return of the administrator to the rule to show cause issued on this petition, the probate court sustained the grant of administration, and on appeal by petitioner, this judgment being sustained, the said petitioner again appeals to this Court.

*Mr. W. Huger Fitzsimons,* for appellant, cites: *The right of action given by Lord Campbell's act does not constitute a part of the estate of decedent:* 37 S. C., 58; Rev. Stat., 2316; 168 U. S., 445; 151 U. S., 673; 11 Ency., 2 ed., 834; 8 Ency., 2 ed., 859; 71 N. W. R., 282.   *This not being a part of decedent's estate, and having no property within State, probate court was without jurisdiction to grant administration:* Code, 39; Rev. Stat., 2001, 2023; 11 Ency., 2 ed., 762, note 741; 64 N. W. R., 732; 29 Kan., 420; 26 Ind., 477; 11 Rich., 572; 73 Am. Dec., 126; 11 Ency., 2 ed., 759; 12 *Id.*, note, 214.   *The probate is a court of limited jurisdiction:* 30 S. C., 358; 10 S. C., 317; 18 S. C., 339; 56 S. C., 69; 20 S. C., 153; Code, 38, 39.   *As to rights of non-residents under Lord Campbell's act:* 181 Pa. St., 525; 93 F. R., 164; *and of non-resident administrators:* 14 S. C., 579; 8 Ency. P. & P., 703, 709; 49 Vt., 189; 108 U. S., 256; 56 S. C., 545; 32 S. C., 598; 103 U. S., 11; 40 N. E. R., 527; 41 Ind., 48; 119 Ill., 232; 8 Ency., 2 ed., 903, 904.   *Questionable whether court will consider additional grounds under rule 5 of this Court:* 39 S. C., 6; 55 S. C., 69; 54 S. C., 354; 33 S. C., 510; 52 S. C., 371; 23 S. C., 105; 38 S. C., 48.   *Motion in case as here pursued is proper one for petitioner to have letters revoked:* 41 S. C., 17; 58 S. C., 495; 56 S. C., 69; 11 Rich., 569; 71 N. W. R., 286; 177 U. S., 214; 12 Ency. P. & P., 196; 38 S. C., 41; 28 S. C., 281; 37 S. C., 73; 46 S. C., 490; 34 S. C., 452; 36 S. C., 578; 40 S. C., 193; 56 S. C., 1; Code, 64, 49, 57; 17 S. C., 323; 26 Ind., 477; 36 Pac., 1059; 7 Mo. App., 403; 8 Ency., 2 ed., 885, note, 887, 888; 5 Ency. P. & P., 868; 176 U. S., 350.

*Messrs. Wilcox & Wilcox,* also for appellant, cite: *If jurisdictional defect appear on record, grant of administration is void, if not only voidable:* Code, 39.   *Right of action given administrator under Lord Campbell's act is not an asset of decedent's estate:* 37 S. C., 55.   *Ordinarily foreign administrator cannot sue here:* 11 Brev., 59; *but in this case he can:* 30 S. W. R., 639; 29 Kan., 420; 26 Ind., 477. *Want*

*of jurisdiction makes appointment absolutely void:* 20 S. C., 155. *Nor can it be conferred because probate decree conceals want of jurisdiction:* Dissenting opinion; 71 N. W. R., 263. *This petitioner has no right of appeal from order granting administration:* 17 S. C., 323.

*Messrs. C. A. Woods, S. W. G. Shipp, Geo. Galletly* and *R. A. Buford,* contra, cite: *Non-resident administrator cannot sue here:* 20 S. C., 167; 14 S. C., 573; 41 S. C., 374; 48 S. C., 74; 18 S. C., 554; 3 Cranch, 319. *Non-resident cannot administer here:* 58 S. C., 469. *Ancillary administration may be granted where there has been no domiciliary administrator:* 2 Bail., 437; 35 Am. Dec., 486. *Death claim is sufficient assets to confer jurisdiction for administration:* 68 Mich., 146; 36 Conn., 213; 65 Ia., 729; 102 Mass., 186; 53 Ill., 226; 20 S. R., 437; 75 Hun., 157; 38 Am. R., 495; 102 U. S., 443; 31 S. W. R., 639; 46 N. W. R., 79; 64 *Id.,* 732; Rev. Stat., 2317. *Where record shows no lack of jurisdiction, petitioner cannot controvert facts stated in record:* 6 Rich. Eq., 380; 38 S. C., 45; 33 S. C., 276; 41 S. C., 18; 5 Fed. R., 523; 20 S. C., 154; Code, 49.

April 18, 1901. The opinion of the Court was delivered by

MR. JUSTICE JONES. This is an appeal from the judgment of the Circuit Court, affirming the judgment of the probate court of Florence County, which refused to revoke letters of administration granted to J. W. McCown, as administrator of James M. Mayo, deceased. James M. Mayo died intestate in Florence County, S. C., on the 12th day of June, 1897. Letters of administration on the estate of Mayo was granted to McCown by the probate court of Florence County, on the 16th day of December, 1897. The administrator commenced an action against the Northeastern Railroad Company on the 27th day of December, 1897, under the statute, commonly referred to as Lord Campbell's act, for damages for the alleged wrongful killing of said

intestate by the said company in Florence County. The said railroad company answered, denying the alleged negligence, and subsequently the cause, on motion, was transferred to Williamsburg County for trial. Then, on the 29th day of January, 1900, the railroad company made this application for revocation of the grant of administration on the ground that the probate court was without jurisdiction, in that said Mayo was a resident of Florida at the time of his death, and owned no estate in South Carolina for administration. The probate court refusing to revoke, held: (1) That the order granting administration was valid on its face, since it recited the jurisdictional facts contested, and that the railroad company had no such interests as would support its attack upon the judgment of the probate court; and (2) that upon the facts stated in the petition of the railroad company, viz: that Mayo was not a resident of this State, but was killed by a railroad train at Florence, S. C., while passing through this State, and that he left no assets in this State to be administrated, other than the right of suit given to the administrator by sections 2315 and 2316 of the Revised Statutes, the probate court of Florence County had jurisdiction to issue letters of administration, as such right of action was sufficient property to authorize the appointment of an administrator. The Circuit Court, on appeal, held that the railroad company had the right to move for revocation of the administration, but affirmed the judgment of the probate court on the second ground. We are now to consider these questions.

1. We notice as first in logical order, whether the Northeastern Railroad Co. had the right in these proceedings to attack the grant of administration by the probate court. In this matter we agree with the view taken by the probate court. The probate court is a court of record, and has jurisdiction of the grant of letters of administration. Sec. 49 of the Code of Procedure expressly enacts as follows: "The jurisdiction assumed by any probate court in any case, so far as it depends on the place of residence or the location of the estate, shall not be contested in

any suit or proceeding whatever, except in an appeal from the probate court in the original case or when the want of jurisdiction appears on the record." It is also provided in sec. 57 of the Code of Procedure, that "any person interested in any final order, sentence or decree of any probate court, and considering himself injured thereby, may appeal therefrom to the Circuit Court * * * within fifteen days after notice of the decision appealed from." The usual citation to kindred and creditors was given in the proceedings to appoint the administrator, and the Northeastern Railroad Co., by the service of the complaint alleging the order of appointment, received actual notice of the order eleven days after it was granted; but as it does not appear that the said company was made a party to said proceedings, we will not hold that it was compelled to appeal therefrom, or be bound thereby for failure to appeal. *Witte* v. *Clark,* 17 S. C., 323. The railroad company, however, was not entitled to be made a party to such proceedings. It was neither next of kin, distributee nor creditor of Mayo, the intestate, and, therefore, does not fall within the class of those interested in the grant of administration. Its relation to the administration was only as a defendant in a suit for damages by the administrator, and its only interest is to defeat the action. Every debtor to an intestate's estate would have a similar interest to defeat administration, but we are not aware that a debtor was ever heard in a probate court in opposition to proceedings for administration on his creditor's estate. By analogy the position of the Northeastern Railroad Co. is no better in this regard than it would be if it were a debtor to the estate of Mayo. *In re Hardy,* 35 Minn., 193; 28 N. W., 219; *Record* v. *Howard,* 58 Me., 225; *Cummings* v. *Hodgdon* (Mass.), 16 N. E. Rep., 732. The effect, therefore, of sec. 49 of the Code, *supra,* is to exempt the judgment of the probate court, in so far as jurisdiction depends on residence of the intestate or the location of assets from any attack by the Northeastern Railroad Co., except for want of jurisdiction appearing on the record. Such want of jurisdiction does

not appear on the record. The petition for administration alleged that Mayo departed this life intestate on the 12th day of June, 1897, in the county and city of Florence, South Carolina, and did not allege that he was a resident of any other State. The petition also alleged that Mayo left no personal property within the jurisdiction of the probate court of Florence County, but did not allege whether he left any other estate either in Florence County or elsewhere in the State, except the right of action for negligent killing of the intestate, which the petition alleged *survived* for the benefit of his widow and children named, and could only be prosecuted by the administrator. The order granting administration recites: "Whereas, James M. Mayo, *late of Florence County*, deceased, died intestate, having whilst he lived and at the time of his death, divers goods, rights and credits within the State aforesaid, &c." It could not, therefore, be said that want of jurisdiction appeared on the face of the record; for leaving out of consideration whether there was any estate for administration, and leaving out of consideration whether the right of action under the statute is a survival one, or whether such right of action alone would constitute a sufficient asset or property to warrant administration in this State, still the finding that James M. Mayo was a resident of Florence County, in this State, at the time of his death, would authorize administration. Revised Statutes, secs. 2001 and 2023, the statutes relating to the grant of letters of administration, are as follows: "In case any person die intestate, the judge of probate of the county where the intestate resided, or he having no residence within the State, in the county where the greater part of his estate may be, shall grant letters of administration of the goods, chattels, rights and credits of such person deceased, to his or her relatives, in the following order, &c." Rev. Stats., 1893, sec. 2001 and 2023, combined. "The granting of administration of the estate of any deceased person shall belong to the judge of probate of the county where such person was last an inhabitant; but if such person was not an inhabit-

ant of this State, the same shall belong to the judge of probate in any county in which the greater part of his or her estate may be." Code, sec. 39. It thus appears that residence in Florence County alone appearing on the face of the record was sufficient, under sec. 49, *supra*, to justify dismissal of appellant's petition for revocation. This particular question is not to be regarded as affected by the following recital in the decree of the Circuit Court: "The fact is, Mayo was at the time of his death a resident of the State of Florida, and that was admitted by counsel for the administration as well as by the pleadings." This was a misapprehension by the Circuit Court. The pleadings by the administrator resisting the application for revocation of his letters distinctly declare, "not admitting any of the allegations of the petition (for revocation) upon which the said order is based, which do not appear on the face of the record of the said proceedings in the Court resulting in the judgment appointing him such administrator, and reserving the right to answer the same," and then proceeds to state four grounds why the petition should be dismissed upon the record in the probate court. Then, as a fifth ground for dismissal, the administrator alleged that, "even if all the allegations of the petition be taken as true, it appears on the face thereof that respondent's intestate left sufficient property within the jurisdiction of this Court to confer jurisdiction to grant said letters, &c." It is only with respect to this last ground, which is in the nature of a demurrer to the petition, that it can with justice be said that the administrator admits that Mayo was not a resident of the State. Both before the probate court and the Circuit Court, the counsel for the administrator contended that on the face of the record in the probate court in the proceedings for appointment of the administrator, no want of jurisdiction appeared, and that the Northeastern Railroad Co. had not such interest as warranted its attack upon such judgment, and the question was independent of the next question discussed and to be determined by the record in the original proceedings.

2. On the other question, we agree with the Circuit Court, that the right of action under the statute being enforcible only by the administrator of the intestate, was warrant for the grant of administration by the probate court of Florence County, where the intestate was killed, and where the railroad company charged with the negligent killing had its residence, even though the intestate was not a resident of this State, and owned no estate for ordinary administration in this State at the time of his death. In so holding, we agree also with the Circuit Court and the contention of appellant, that the act in question is not a revival of the old cause of action which belonged to the intestate, but creates a new cause of action for the benefit of the person named. This last point is only incidentally involved in the appeal since the Circuit Court so holds, and no appeal is from that ruling; but as the appellant relies on this proposition as the major premise of the argument for reversal, we notice it. The language of the statute is as follows:

"Sec. 2315. Whenever the death of a person shall be caused by the wrongful act, neglect or default of another, and the act, neglect or default is such as would if death had not ensued have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person or corporation who would have been liable if death had not ensued, shall be liable to an action for damages notwithstanding the death of the person injured, although the death shall have been caused under circumstances as make the killing in law a felony.

"Sec. 2316. Every such action shall be for the benefit of the wife, husband, parent and children of the person whose death shall have been so caused; and if there be none such, then for the benefit of the heirs at law or distributees of the person whose death shall have been so caused, as may be dependent on him for a support, and shall be brought by, or in the name of, the executor or administrator of such person; and in every such action the jury may give such damages as they may think proportioned to the injury

resulting from such death to the parties respectively for whom and for whose benefit such action shall be brought, and the amount so recovered shall be divided among the before-mentioned parties in such shares as they would have been entitled to if the deceased had died intestate and the amount recovered had been personal assets of his or her estate.

"Sec. 2317. All such actions must be brought within two years from the death of such person, and the executor or administrator plaintiff in the action shall be liable to costs in case there be a verdict for the defendant, or nonsuit, or discontinuance, out of the goods, chattels and lands of the testator or intestate, if any; and if none, then out of the proper goods and chattels of such executor or administrator.

"Sec. 2318. The provisions of the three last preceding sections shall not apply to any case where the person injured has for such injury brought action which has proceeded to trial and final judgment before his or her death."

In the case of *Price* v. *Railroad Co.,* 33 S. C., 556, the Court held it competent for the defendant, in order to defeat the action by the administrator, to introduce in evidence a release for the injury executed by the intestate in his lifetime, on the ground that whatever would have barred the intestate of recovery had he lived and brought action, would bar his administrator; and on page 562, the Court used this language: "If the purpose was to create a new and independent cause of action, it is a little singular that the legislature should expressly provide, as it has done in sec. 2186 (2318, *supra*), for the defeat of one cause of action accruing to one person by the enforcement of another cause of action which had accrued to another person;" but the Court did not deem it necessary to decide "whether the statute gives a new cause of action or simply continues the original cause of action accruing to the party injured, which would otherwise terminate with his life, enlarging its scope so as to embrace compensation for the injury resulting from the death." In the case of *Reed* v. *R. R. Co.,* 37 S. C., 42, the Court held

that the administrator could maintain action under the statute, notwithstanding the death of the intestate was instantaneous. The Circuit Court had ruled to the contrary on the ground that under the statute the right of action was not a new action, but a revival of such action as the intestate had; and inasmuch as the intestate's death was instantaneous, he had while living no cause of action. Still the Court did not expressly decide whether the right of action was a new cause of action or a revival of the right of action had by the intestate, although the following language by Mr. Justice Pope, at page 53, would seem to imply that the Court thought the action was a new one: "That the act requires the personal representative (administrator or executor) to sue, need not trouble us. The legislature could as well impose that duty on the sheriff or the coroner. The proceeds recovered are not for creditors, or the family generally, or for the legatees, but is strictly confined to certain members of the family of the deceased." In the case of *Lilly* v. *R. R. Co.*, 32 S. C., 142, the Court held it essential to a cause of action under this statute, to allege that the intestate left surviving him a wife, or children, or parents, or that the action was for their benefit; and that to allow an amendment alleging such facts would entirely change the nature of the action alleged in the complaint. And in the case of *Nohrden* v. *N. E. R. R. Co.*, 59 S. C., 107, the Court held that in estimating damages under this statute, the jury could consider the wounded feelings of the beneficiaries named, resulting from the death of the person killed by the wrongful act of another.

This review of decided cases shows that the trend of decisions in this State is towards the view that the right of action under the statute is a new one and not a mere revival. This view, we think, is the correct one. It is true, that under the statute the right of action in the administrator depends upon whether the deceased, if he had lived, would have had a right to recover. *Price* v. *R. R.* and *Reed* v. *R. R., supra.* This, however, is the statutory condition upon which the right of recovery in the new created action

is based, and does not indicate that the old cause of action is revived or carried forward into the new. The absence of any words showing expressly or by necessary implication an intention to make the action a survival one, indicates a contrary intent; for the absence of such words the rule of the common law that actions *ex delicto* die with the death of the injured person, operates. In the next place, the damages recoverable are for only such injury as results from the death to the parties for whose benefit the action is brought; whereas, if it were intended as a survival action, the recovery would very likely have been confined to damages for the loss and suffering of the person directly injured. The object, scope and measure of damages in the new statutory action is wholly different from the action as it would stand under the common law action revived. The appellant concedes that if the action merely survived the intestate, the cause of action would be a sufficient asset to warrant administration; but the contention is that the action not being a mere revival of the original action but a wholly new action, such right of action in the administrator for the benefit of the statutory beneficiaries, is not an asset or property of the intestate upon which administration could be granted. It is doubtless true, as a general proposition, that the existence of assets of the intestate in this State is essential to give the probate court jurisdiction to grant administration on the estate of a nonresident, and it is also true, that the usual meaning attached to the word "assets" is any property applicable to the payment of debts. But in view of the statute under consideration, a broader significance ought to be given to the term "assets," so as to include any right of action which cannot be enforced except by the administrator, and which is made distributable by the administrator under statutory directions. This statute creates a right which cannot be enforced except by grant of administration somewhere.

It is argued that administration should be granted in the State where the deceased was domiciled—Florida, in this case. But it does not appear in the record before us what

are the statutes of Florida governing such a case, and there is no presumption that the statutes of Florida are like ours in this matter. For all we know to the contrary, it may not be possible in Florida to secure an administration upon such a claim. And in case administration could be obtained in Florida, the appointment there would not authorize a suit by the administrator in this State, in the absence of a statute of this State permitting it, and there is none. *Dial* v. *Gary,* 14 S. C., 573, and other cases that might be cited. We do not think the statute in question was intended to be dependent upon the statutes of any other State for its full execution, but is sufficient in itself to carry out its object. To hold that a foreign administration was proper or necessary in this case, when such administration could not be enforced in this State, would be to hold the statute inapplicable to non-residents, especially to non-residents owning no property in this State. Whereas, we think the statute is in terms broad enough to cover any person, resident or non-resident, with or without property in this State. To give such right of action to propertyless residents and to deny it to propertyless non-residents, would be a distinction which we think was not contemplated by the legislature—if, indeed, such a discrimination would be lawful. The statute is remedial and should be liberally construed so as to accomplish its object. We, therefore, hold that the statute creating a right of action which cannot be enforced except by an administrator, and providing for a special distribution by said administrator of the proceeds, will warrant the probate court of the county where the intestate was killed in granting administration for the purpose of enforcing such right of action. This view is well supported by authority in other jurisdictions. *Hutchins* v. *St. Paul &c. R. R. Co.* (Minn.), 46 N. W. Rep. 79; *Findlay* v. *Chicago &c. R. R. Co.* (Mich.), 64 N. W. Rep., 733; Woerner's American Law of Administration, sec. 205. In the case of *Missouri &c. R. R. Co.* v. *Bradley* (Neb.), 71 N. W. Rep., 289, the Court was unanimous in holding that under the authority of *Railroad Co.* v. *Lewis,* 24 Neb., 848,

40 N. W. Rep., 401, such a cause of action is sufficient to warrant the granting of letters of administration, although the proceeds of the action are not to be distributed according to the usual course; but a majority of the Court further held that the appointment should have been made in the domicile of the deceased non-resident, since by statute in Nebraska, an administrator duly appointed in any other State could prosecute an action in Nebraska in his capacity as administrator, it being conceded by the majority holding this last mentioned view that if the law did not permit a suit by a non-resident or foreign administrator, such a state of affairs would fix the situs of the claim in such manner that administration must be granted where the claim could be reached. This we understand to be the holding of the Nebraska Court in the case cited, which contains an interesting discussion of both sides of the question before us.

So far as we have ascertained, there are only two cases to the contrary of the view we have announced: *Perry* v. *R. R. Co.,* 29 Kan., 420; *Railroad Co.* v. *Swayne's Admr.,* 26 Ind., 477, cited by the appellant. Since the argument we have been referred by appellant to the case of *Marvin* v. *Mayesville R. R. Co.,* 49 Fed. Rep., 436, as supporting his contention; but this case was reversed by the Circuit Court of Appeals, Sixth Circuit, 8 C. C. A., 21, which Court held that the Kentucky statute, "giving the personal representative a right of action for the wrongful death of his decedent, will not be construed to confer such right upon a foreign administrator, contrary to the common law and the established policy of the State." See, also, on this point, *Louisville & Nashville R. R. Co.* v. *Brantly,* 96 Ky., 297; 49 Am. St. R., 291, and note on page 300. It must be said, however, that in Kentucky the proceeds of such action are assets for creditors, and according to appellant's view in such case, the right of action is an asset warranting administration. For this reason we did not cite the case of *Brown, Administrator,* v. *Louisville &c. R. R. Co.* (Ky.), 30 S. W. Rep., 639, and

cases from other States, where the right of action is held to be a survival of the original action.

The judgment of the Circuit Court is affirmed.

MR. JUSTICE GARY *concurs in the result.*

MR. CHIEF JUSTICE MCIVER, *dissenting.* While I concur fully with Mr. Justice Jones in some of the views which he presents, I cannot agree with him in the conclusion which he reaches. The fundamental inquiry is whether the probate court for Florence County had any jurisdiction to grant letters of administration upon the personal estate of Jas. M. Mayo, deceased, to J. W. McCown. The present Constitution, in sec. 19, of art. V., provides (passing by the county of Charleston, for which special provisions are made,) that in all other counties of the State, jurisdiction, in all matters testamentary and of administration, shall be vested as the General Assembly may provide; and the provision made by the General Assembly, as may be found by reference to secs. 2023 and 2001, is that in case any person shall die intestate, the judge of probate of the county where the intestate resided, or if he had no place of residence in the State, then of the county where the greater part of the estate of such intestate may be, "shall grant administration of the goods, chattels, rights and credits of such deceased person," and the statute proceeds to indicate the persons to whom such grant shall be committed, as to which no question is raised. This is the only provision, so far as I am informed, which has been made by the General Assembly, vesting jurisdiction in any Court or in any person to grant administration on the estate of an intestate. And, under the express terms of this provision, it cannot be disputed that the only person invested with jurisdiction to make such grant is the judge of probate of the county where the deceased resided, or if he had no place of residence in this State, then the judge of probate of the county where the greater part of his, the intestate's, estate may be. The practical result would be that unless the

27—60

intestate, Mayo, resided in the county of Florence, or had an estate in that county, the judge of probate of such county would have no jurisdiction to grant letters of administration to McCown, as he undertook to do. So that the next inquiry, in logical order, would be whether it has been made to appear, either that Mayo was a resident of Florence County or that he left an estate therein. It is contended, however, by the counsel for respondent, that the appellant is shut off from any general inquiry as to those two facts, and that we are confined, by secs. 49 and 57 of the Code, to the inquiry whether it appears on the record (meaning the record in the probate court granting the letters of administration to McCown) that there was a want of jurisdiction. So far as sec. 57 of the Code is concerned, it is very clear, from the decision of this Court in *Witte* v. *Clark,* 17 S. C., 313, that it does not shut off inquiry; and it seems to me that, upon the same principle upon which that decision was rested, we should hold that sec. 49 cannot have the effect claimed for it. The principle upon which that decision was rested, is that, as no person who is not a party to a proceeding is not bound by any judgment rendered therein, such person could not appeal from such judgment; for if he undertook to do so, the appellate tribunal could very well say to him, you have no standing in this Court, as your legal rights have not been effected by the judgment which you are seeking to reverse. For this reason it was there held that the language used in sec. 57 must be regarded as referring only to persons who were parties to the proceedings. I see no good reason why the same may not be said in reference to the language used in sec. 49, for it manifestly presupposes that there was a right of appeal. Again, it is contended by counsel for respondent that the present case, being a proceeding in *rem* and not a proceeding *in personam* as was the case in *Witte* v. *Clark, supra,* and hence that decision does not apply here, I suppose that there could be no proceeding in *rem* unless there was a *res;* and the *res* in a case like this, would, as I understand it, be the estate of the intestate; and if there is no

estate of the intestate, within the jurisdiction of the Court, as I shall hereafter undertake to show, then there would be no *res,* and consequently no proceeding in *rem.*

But even assuming, for the sake of argument, that we are confined to the inquiry whether the want of jurisdiction appears on the record, it seems to me that the record of the proceeding in the court of probate, fairly and properly construed, does show on its face a lack of jurisdiction. That record does not consist only of the letters of administration, from which certain stereotyped words, which are sometimes used merely as *descriptio personae,* have been extracted for the purpose of showing that Mayo was a resident of Florence County at the time of his death— a statement that every one knew was not true. Those words, I must suppose, were in the printed form used for letters of administration, and were inadvertently allowed to remain there; for I cannot suppose that such a high-minded and honorable man as the judge of probate for the county of Florence is known to be, would, intentionally, make a misstatement of a fact. It will be noted that the judge of probate, in making his decree in this case, makes no allusion to the recital in the letters of administration, that the deceased, Mayo, was *"late of Florence County,"* but undertakes to vindicate his jurisdiction to grant such letters by the fact that, upon the death of Mayo, by virtue of the statute, a right of action would accrue to his administrator, under the circumstances stated in this case; and this he thought was sufficient to invest him with jurisdiction to grant administration upon the estate of the deceased. I do not mean to say that he bases his conclusion that the application to revoke the letters of administration should be refused, *solely* upon that ground; all I mean to say is that he claims to have acquired jurisdiction only in that way. But the petition for letters of administration is just as much a part of the record as the letters granted in response to such petition. Indeed, as it seems to me, that petition is the proper source from which to obtain the facts necessary to confer jurisdiction. When

a suitor invokes the jurisdiction of any judicial tribunal, he must take such a case as shows that the tribunal whose jurisdiction he invokes has jurisdiction of the case thus made. Especially is this so as to the probate court, which, while not a court of *inferior* jurisdiction, is a court of *limited* jurisdiction; and hence when the jurisdiction of that tribunal is invoked, the suitor must show, by the case which he makes, that it is a case falling within the limits of the jurisdiction prescribed by law for such tribunal. Now, in a case of this kind, the petition for letters of administration is the mode by which the petitioner makes his case, of which the court of probate is asked to take jurisdiction. Looking to the petition for letters of administration which is set out in the "Case," it is quite certain that it does not state, either the fact that the deceased was a resident of the county of Florence or that the greater part of his estate was in that county, one of which was necessary to invest the judge of probate of Florence County with jurisdiction of the case. On the contrary, it seems to me that the allegations of the petition, fairly and properly constructed, show that the deceased was not a resident of Florence County, but was a resident of the State of Florida; and that he left no personal property in Florence County. First, as to the matter of residence; in paragraph one of the petition the allegation is that the deceased departed this life intestate, in the city and county of Florence, leaving surviving him, as his only heirs at law and distributees, his widow and his children therein named, and that all of said heirs at law and distributees were residents of the State of Florida. Now, in the absence of any allegation to the contrary (and there is none in the petition), the only inference that can properly be drawn from the allegation in the petition is, that the deceased was a resident of the State of Florida; for the presumption is that a husband resides with his wife—the domicile of the wife is that of the husband. Next, as to the location of the estate of the husband—the allegation in the second paragraph of the petition is distinct: "that at the time of his death, the said James M.

Mayo left no personal property within the jurisdiction of this Court"—meaning, of course, the probate court of the county of Florence. It is true, that the petition, in this paragraph, proceeds to allege certain facts, which he claims would, if Mayo's injuries had not proved fatal, have given him a cause of action; and that, under the statute, a cause of action survives for the benefit of his widow and children, which can only be prosecuted by the administrator of the estate of the said Mayo. It will be observed that there is no inconsistency between these additional allegations and the distinct allegation made in the outset of the petition—that Mayo died leaving no property in the county of Florence; for these allegations do not assert that this right of action therein referred to constituted any part of the estate of said Mayo, but rather implies the contrary.

It seems to me, therefore, that the record of the proceedings in the probate court under which the letters of administration were granted, looked at as a whole and fairly considered, do show on their face a want of jurisdiction on the part of the judge of probate for Florence County to grant the letters of administration.

But there is another view of this matter which, it seems to me, deserves consideration. It appears from the "Case" as prepared for argument here that the Northeastern Railroad Co., the appellant herein, filed a petition in the court of propate for Florence County, alleging amongst other things, which I do not set out here, as I think a copy of such petition should be included in the report of the case, that the judge of probate for said county had, upon the *ex parte* application of McCown (of which application the appellant had no notice), unsupported by any evidence tending to show that the said Mayo was a resident of the county, or that he had any property therein, granted letters of administration upon the personal estate of the said Mayo to the said McCown; that the said Mayo at the time of his death was not a resident of this State, but was at the time of his death, and long prior thereto, a resident of the State of Florida; and that the

said Mayo died leaving no property or estate of any description whatsoever within the limits of this State, either at the time of his death or at the time of the granting of letters of administration or since. Wherefore, the petitioner prays that the grant of administration to the said McCown be revoked and cancelled. Upon the filing of this petition the judge of probate granted an order requiring the said McCown to show cause why the letters of administration previously granted him should not be revoked and cancelled. In obedience to such order the said McCown made his return, in which he uses the following language: "Not admitting any of the allegations of the petition upon which the said order is based, which do not appear on the face of the record of the said proceedings in this court resulting in the judgment appointing him such administrator, but reserving the right to answer the same, respectfully shows to the Court that the said petition should be dismissed on the following grounds:" and then proceeds to state five grounds, in which not a single *fact* stated in the petition was denied or in any way questioned; but these grounds raise nothing but legal questions. The return of the administrator must, therefore, be regarded as nothing more than a demurrer to the petition for revocation. It was so treated by the judge of probate and by the Circuit Judge, and there was no exception on that point. Hence the question cannot be raised here. But even if the question could be raised, I think that the view which both of those officials took was correct. The words, "not admitting any of the allegations of the petition," &c., which I have quoted from the return, may be regarded by some as an ingenious mode of avoiding the necessity of denying allegations of fact, which are known to be true; but there is no system of pleading with which I am acquainted which would recognize that mode as sufficient to raise an issue of fact. Indeed, counsel who drew this return evidently recognized the correctness of my view, as they took care to reserve the right to answer the allegations of the petition—of which reserved right, however, the administrator has never availed

himself. So that, as the case comes before us, all the allegations of fact in the petition must be regarded as admitted by the demurrer, and the only questions presented by this appeal are the legal questions raised by the demurrer. There are only two of these questions which I deem it necessary to consider. 1st. Whether the right of action conferred by the provisions of Lord Campbell's act can be regarded as such a part of the estate of the intestate, Mayo, as would invest the judge of probate of Florence County with jurisdiction to grant letters of administration upon the estate of said intestate? 2d. Whether the provisions of Lord Campbell's act, as incorporated in sections 2315-2318 of Rev. Stat. of 1893, can be regarded as a sufficient amendment of our statutes, conferring jurisdiction on the judge of probate to grant administration upon the estates of intestates to warrant the appointment of an administrator of a deceased non-resident, who dies leaving no property within the limits of this State.

In considering the first of these questions, the inquiry naturally presents itself, whether the right of action conferred by this special statute, in a case like this, is a new right of action, or merely a continuance or revival of the right of action which the deceased would have had if his injuries had not been fatal. This inquiry is so conclusively disposed of by Mr. Justice Jones in his opinion, that I do not deem it necessary to add anything (even if I could) to what he has so well said upon this point. But even if the right of action conferred by the statute is not a mere revival or continuance of the right of action which the deceased would have had if he had not died, but is an entirely new right of action, the question still remains, whether such new right of action can in any sense be regarded as a part of the assets or estate of the deceased. Now this new right of action owes its origin exclusively to the statute. It never existed in this State until our act was passed in 1859—12 Stat., 825. It is, therefore, a creature of statute, and in determining its nature and effect we must look to the terms

of the statute, read in the light of the provisions of the Constitution, which controls the legislature, the Courts and the people, in order to ascertain the intention of the legislature in bringing into existence this new right which had never previously existed. Looking into the terms of this statute, we do not find a single word or phrase which even implies an intention on the part of the legislature to make this right, or its fruits, any part of the assets of the estate of the decedent. On the contrary, we do find there language which plainly implies that the legislature intended that the same should *not* be any part of the assets of the estate of the decedent. In that portion of sec. 2316, which was originally taken from the second section of the act of 1859, prescribing how the amount recovered should be divided amongst the beneficiaries, these words are used: "shall be divided amongst the before-mentioned parties in such shares as they would have been entitled to if the deceased had died intestate, *and the amount recovered had been personal assets of his or her estate."* These words which I have italicized necessarily imply that the legislature did not intend that the amount recovered should be the assets of the estate of the decedent, but should be distributed among the beneficiaries mentioned in the same shares as if *they had been* personal assets of his estate. It was the same thing as saying that, although the amount recovered is no part of the personal assets of the estate of the decedent, yet they shall be divided among the beneficiaries in such shares as they would have been entitled to if the same had been such personal assets. The only act which I have been able to find amending this section (act of 1898, 22 Stat., 788,) not only makes no change in this respect, but on the contrary uses precisely the same words which I have italicized above, and only makes certain changes in the persons mentioned as beneficiaries. Besides, to suppose that the legislature intended to make this right of action, or the fruits thereof, a part of the assets of the estate of a decedent, and at the same time to deny to the creditors of such decedents the right to have such assets

applied to the payment of their debts, as both in law and good morals they are entitled to, would be to impute to the legislature an intention to lend its aid to the perpetration of a fraud upon such creditors—and this no Court ought to do. It seems to me clear, therefore, that the right of action conferred by the statute, or the fruits thereof (as the one necessarily follows the other), can in no sense be regarded as any part of the assets of the estate of a decedent. These views have the support of high authority. See *Stewart* v. *Balt. & Ohio R. R. Co.,* 168 U. S., at page 449; *Martin* v. *Balt. & Ohio R. R. Co.,* 151 U. S., at page 695-6-8; Am. & Eng. Ency. of Law, 2 ed., at page 859.

The second question above stated will next be briefly considered. I do not see how it is possible to regard the provisions of Lord Campbell's act as incorporated in Rev. Stat. of 1893, as an amendment to any of our statutory provisions in regard to the appointment of administrators. The two subjects are entirely foreign to each other, and there is no hint or suggestion in any of our statutory provisions that the one was intended as an amendment to the other. On the contrary, secs. 2001 and 2023 of the Rev. Stat. of 1893, hereinabove referred to, are contained in the same volume which contains the sections of Lord Campbell's act, and I am unable to discover any indication whatever in these, or any other sections, of an intention to extend the limits of the jurisdiction conferred upon the judge of probate by secs. 2001 and 2023, or in any way to modify or qualify the same.

It is contended, however, that the result of the view which I have taken would be to deny to the beneficiaries mentioned in the statute, the benefit of the statute whenever a person is killed in this State by the wrongful act of another, who is not a resident of this State, and who dies leaving no estate within this State. But it seems to me that there are two conclusive answers to this contention. 1st. That the heirs at law of such a person would be in the same position in which every one was prior to the passage of the act of 1859; and if the legislature, in passing this act and the several acts

amendatory thereof, have omitted to make such provision as would enable the heirs at law of a non-resident, who is killed in this State by the wrongful act of another, and dies leaving no estate within the limits of this State, to avail themselves of the benefit of such legislation, the Court has no power to supply such omission. 2d. I am not prepared to concede that such a result would follow from the view which I have taken; for there is certainly high authority for saying that, in such a case, the administrator of the domicil could bring the action. The reason for the rule that a foreign administrator cannot sue in this State as usually given is, that it is necessary for the protection of the rights and interests of the creditors of the decedent within the State; and as the rights of creditors are in no way involved in a case like this, the reason for the rule ceases, and under the maxim, *cessante ratione legis cessat ipsa lex,* that rule would not apply in a case like this.

It seems to me, therefore, that in any view which I am able to take of this case, that the judgment of the Circuit Court should be reversed, and the case remanded to the court of probate, with instructions to sustain the demurrer to the petition for revocation of the letters of administration granted to the said McCown, and with leave to answer said petition, if he so desires, raising such issues of fact as may be deemed pertinent to the case.